1  Benjamin N. Gluck - State Bar No. 203997
      bgluck@birdmarella.com
2  Ashley D. Bowman - State Bar No. 286099
      abowman@birdmarella.com
3  BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
   DROOKS, LINCENBERG & RHOW, P.C.
4  1875 Century Park East, 23rd Floor
   Los Angeles, California 90067-2561
5  Telephone: (310) 201-2100
   Facsimile: (310) 201-2110
6
   Attorneys for Plaintiff John Doe
7
                    **UNITED STATES DISTRICT COURT**
8
         **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**
9

10

11  JOHN DOE,                          CASE NO. 2:21-cv-02803

12          Plaintiff,                 **NOTICE OF *EX PARTE***
                                        **APPLICATION AND *EX PARTE***
13      vs.                             **APPLICATION FOR TEMPORARY**
                                        **RESTRAINING ORDER AND**
14  UNITED STATES OF AMERICA;           **ORDER TO SHOW CAUSE RE:**
    TRACY L. WILKISON (OFFICIAL         **PRELIMINARY INJUNCTION;**
15  CAPACITY), KRISTI KOONS             **MEMORANDUM OF POINTS AND**
    JOHNSON (OFFICIAL CAPACITY)         **AUTHORITIES**
16
            Defendants.                 *[Filed Concurrently with Declarations*
17                                      *of Ariel A. Neuman and Benjamin N.*
                                        *Gluck; and Proposed Order]*
18

19

20

21

22

23

24

25

26

27

28

**PLEASE TAKE NOTICE** that Plaintiff applies, *ex parte*, for a temporary restraining order ("TRO") and an order to show cause ("OSC") re preliminary injunction against the United States of America ("Defendant"), enjoining Defendant from continuing to violate Plaintiff's rights, under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures and Plaintiff's Fifth Amendment right against self-incrimination and right to due process , in connection with Respondent's unlawful seizure of Plaintiff's property from a safety deposit box at 9182 W Olympic Blvd, Beverly Hills, California 90212.

Plaintiff urges the Court to issue a TRO and OSC in the form of the proposed order submitted concurrently with this *ex parte* application.  This *ex parte* application is made pursuant to Federal Rule of Civil Procedure 65 and Central District Local Rule 65.

This *ex parte* application is based upon this Notice, the Memorandum of Points and Authorities, the Declarations of Benjamin N. Gluck and Ariel A. Neuman, the filings in this action, the Proposed Order, which is being lodged in accordance with Local Rule 7-20, and any and all evidence, argument, or other matters that may be presented at the hearing.

On March 24, 2021, Ariel Neuman, a principal with the firm representing Plaintiff, communicated telephonically and by email with AUSA Andrew Brown, during which they discussed the matters giving rise to this application.  On March 31, 2021, counsel for Plaintiff provided notice to the United States Attorney's Office for the Central District of California and the Los Angeles Field Office of the Federal Bureau of Investigation that Plaintiff would be filing an *ex parte* application on March 31, 2021, for a TRO to enjoin the Government from continuing to violate Plaintiff's constitutional rights.  (Declaration of Benjamin N. Gluck ¶¶ 9-14.) Specifically, and as set forth in Mr. Gluck's declaration, counsel (1) left a message for and then spoke with AUSA Andrew Brown, and stated that counsel would be filing this application on March 31 and why; (2) left a voicemail with the U.S.

1   Attorney's Office for the Central District, stating that counsel would be filing this

2   application on March 31 and why, and providing counsel's contact information; (3)

3   sent an email to the email address listed on the website of the U.S. Attorney's Office

4   for the Central District as being the appropriate method for providing notice of TRO

5   applications (and copying Mr. Brown), stating that counsel would be filing this

6   application and why; and (4) spoke with a representative of the Legal Department of

7   the Los Angeles Field Office of the FBI, stating that counsel would be filing this

8   application on March 31 and why, and providing counsel's contact information.  (*Id.*

9   ¶¶ 9-14.)  Mr. Brown declined to stipulate to the relief sought in the TRO

10   application in order to preserve the status quo pending a ruling on the OSC.

11   DATED:  March 31, 2021       Benjamin N. Gluck

12                               Ashley D. Bowman

                              Bird, Marella, Boxer, Wolpert, Nessim,

13                               Drooks, Lincenberg & Rhow, P.C.

14

15

16               By: _____

17                         Benjamin N. Gluck

                    Attorneys for Plaintiff

18

19

20

21

22

23

24

25

26

27

28

*EX PARTE* APPLICATION FOR TRO ENJOINING ILLEGAL SEARCH AND SEIZURE

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I. INTRODUCTION .................................................................................................. 1

II. FACTUAL BACKGROUND ............................................................................... 2

    A.    USPV's Private Safe Deposit Box Service ............................................... 2

    B.    Plaintiff is the lessee of at least one box at USPV ................................. 3

    C.    The Government's seizure of all property at USPV and its announced intention to leverage the seizure to commence investigations of all box holders ..................................................... 4

III. LEGAL STANDARDS ....................................................................................... 7

    A.    A Temporary Restraining Order May Issue to Prevent Immediate, Irreparable Harm. ..................................................... 7

    B.    Fed. R. Crim. P. 41(g) Offers Relief to Anyone Whose Property Is Impaired by a Seizure .................................................... 8

    C.    An Injunction May Issue to Prevent Further Deprivation Of Constitutional Rights ..................................................... 9

IV. ARGUMENT ..................................................................................................... 10

    A.    The Government Is Engaging In An Ongoing Illegal Search And Seizure ..................................................................................... 10

        1.    Plaintiff Has An Individual Fourth Amendment Right In His Boxes And The Government Cannot Search Or Seize Plaintiff's Boxes Without Probable Cause And A Warrant *Specific To Each Box* .................................................... 11

        2.    Plaintiff Should Not Be Forced To Comply With The Government's Announced Plan To Retain Possession Of All Property At USPV Until All Owners Submit To An "Investigation" To Retrieve It .................................................... 13

            a.    The Government Seeks to Force Plaintiff to Surrender Plaintiff's Fifth Amendment Rights To Assert Plaintiff's Fourth Amendment Rights .................. 13

            b.    The Warrant Likely Does Not Permit This Procedure .......................................................... 14

        3.    The Government's Improper Refusal To Comply With Rule 41(f)(1)(C) Should Not Be Permitted To Frustrate Plaintiff's Attempt To Seek Judicial Review And Redress ....... 16

    B.    The Court Should Enter a Temporary Restraining Order Enjoining The Government From Continuing to Violate Plaintiff's Constitutional Rights ..................................................... 17

i

1.  Plaintiff Is Likely to Succeed on His Claims for Return of Plaintiff's Property and Injunctive Relief Claims ...................... 17

    a.  Plaintiff is Likely to Succeed on His Rule 41(g) Claim For Return of Property ............................................ 18

        (i)  The Court Can and Should Exercise Its Jurisdiction to Decide Plaintiff's Rule 41(g) Claim .................................................................... 18

        (ii)  The Facts and Law Favor Granting Plaintiff's Request For Return of Plaintiff's Personal Property ................................................................ 20

    b.  Plaintiff is Likely to Succeed on Plaintiff's Declaratory and Injunctive Relief Claims ....................... 21

2.  Plaintiff Will Continue To Suffer Immediate and Irreparable Harm In the Absence of the Preliminary Relief Requested Here ...................................................................... 21

3.  Granting Plaintiff's Requested Preliminary Relief Is In The Public Interest ...................................................................... 22

V. RELIEF REQUESTED ............................................................................ 22

VI. CONCLUSION ..................................................................................... 23

*EX PARTE* APPLICATION FOR TRO ENJOINING ILLEGAL SEARCH AND SEIZURE

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Alliance for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) .......................................................................8, 18

*Canatella v. State of California*,
    304 F.3d 843 (9th Cir. 2002) ..............................................................................21

*Connelly v. Horner*,
    No. C-88-5085-DLJ, 1989 WL 125011 (N.D. Cal. June 15, 1989)....................21

*Couch v. United States*,
    409 U.S. 322 (1973) (Brennan, J. concurring) ...................................................14

*Cox v. United States*,
    No. CV 07-1200-PHX-SMM, 2008 WL 477877 (D. Ariz. Feb. 19,
    2008) ...................................................................................................................20

*Does I-XXII v. Advanced Textile Corp.*,
    214 F.3d 1058 (9th Cir. 2000) ...............................................................................3

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ..............................................................................................9

*Frontline Medical Associates, Inc. v. Coventry Healthcare Workers
    Compensation, Inc.*,
    620 F. Supp. 2d 1109 (C.D. Cal. 2009)..................................................................7

*Fyock v. City of Sunnyvale*,
    25 F. Supp. 3d 1267 (N.D. Cal. 2014)..................................................................20

*In re Horn*,
    976 F.2d 1314 (9th Cir. 1992) ..............................................................................14

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) .............................................................9, 19, 21, 22

*Nat'l Urb. League v. Ross*,
    484 F. Supp. 3d 802 (N.D. Cal. 2020)..................................................................19

*Nelson v. Nat'l Aeronautics & Space Admin.*,
   530 F.3d 865 (9th Cir. 2008), *rev'd on other grounds*, 562 U.S. 134
   (2011).........................................................................................................21

*Ramsden v. United States*,
   2 F.3d 322 (9th Cir. 1993) ................................................................18, 20

*Republic of the Philippines v. Marcos*,
   862 F.2d 1355 (9th Cir. 1988) ..................................................................8

*Matter of Residence in Oakland, California*,
   354 F. Supp. 3d 1010 (N.D. Cal. 2019)...................................................14

*Simmons v. United States*,
   390 U.S. 377 (1968) ...................................................................13, 14, 19

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
   240 F.3d 832 (9th Cir. 2001) ....................................................................7

*United States v. $191,910.00 in U.S. Currency*,
   16 F.3d 1051 (9th Cir. 1994) ..................................................................19

*United States v. Busk*,
   693 F.2d 28 (3d Cir. 1982) .....................................................................12

*United States v. Chadwick*,
   433 U.S. 1 (1977), *abrogated on other grounds by California v.*
   *Acevedo*, 500 U.S. 565 (1991)...........................................................11, 19

*United States v. Clark*,
   638 F.3d 89 (2d Cir. 2011) .....................................................................12

*United States v. Comprehensive Drug Testing, Inc.*,
   621 F.3d 1162 (9th Cir. 2010)...................................................................8

*United States v. Hinton*,
   219 F.2d 324 (7th Cir. 1955).......................................................11, 12, 18

*United States v. Ibrahim*,
   522 F.3d 1003 (9th Cir. 2008)...................................................................9

*United States v. Jacobsen*,
   466 U.S. 109 (1984) ...............................................................................10

*EX PARTE* APPLICATION FOR TRO ENJOINING ILLEGAL SEARCH AND SEIZURE

*United States v. Kama*,
    394 F.3d 1236 (9th Cir. 2005) ............................................................... 9

*United States v. Martinson*,
    809 F.2d 1364 (9th Cir. 1987) ............................................................... 8

*United States v. Spilotro*,
    800 F.2d 959 (9th Cir. 1986) ........................................................ 11, 19

*United States v. Wetselaar*,
    No. 2:11-CR-00347-KJD, 2013 WL 8206582 (D. Nev. Dec. 31,
    2013) ........................................................................................................ 11

*University of Texas v. Camenisch*,
    451 U.S. 390 (1981) ................................................................................. 8

*Winter v. Natural Resources Defense Council*,
    555 U.S. 7 (2008) ............................................................................ 7, 8, 18

**Federal Statutes**

18 U.S.C. § 1001 ............................................................................................ 6

**Other Authorities**

Fed. R. Civ. P. 65(b)(1)(A) ......................................................................... 7

Fed. R. Crim. P. 41 ........................................................................... 4, 5, 17

Fed. R. Crim. P. 41(c) ................................................................................ 18

Fed. R. Crim. P. 41(f)(1)(C) ...................................................................... 16

Fed. R. Crim. P. 41(g) ........................................................................*passim*

2 LaFave, *Search & Seizure: A Treatise On The Fourth Amendment* §
    4.12(a) (6th ed.) ...................................................................................... 16

2 LaFave, *Search & Seizure* § 4.5(b) (6th ed.) ...................................... 12

# I.

## INTRODUCTION

Plaintiff John Doe seeks a temporary restraining order and a preliminary injunction to prevent the government from continuing to violate his Fourth and Fifth Amendment rights. Turning the Fourth and Fifth Amendments on their heads, the Government has seized Plaintiff's non-contraband property, and that of hundreds of others like him, with neither probable cause nor a warrant, and declares that it will not return the property unless Plaintiff waives his Fifth Amendment rights and submits to an investigation. Plaintiff asks the Court to stop this.

During the week of March 22, 2021, the Government seized and began searching hundreds of private safe deposit boxes at a private business in Beverly Hills. These boxes are separately rented and controlled by hundreds of individuals, each of whom has his or her own Fourth and Fifth Amendment protected rights in his or her property stored there. Despite not having a valid search or seizure warrant for any specific boxes, the Government has announced that it has "inventoried" the contents of all of the boxes and will not return them unless the owners (1) identify themselves to the Government and (2) submit to and pass a "criminal investigation" into how they came to possess any valuables in their boxes. The Government has also declared that it will not give a copy of the warrant to counsel unless counsel discloses his client's identity.

Plaintiff seeks a temporary restraining order enjoining the Government from further searches of the boxes, from requiring that box holders identify themselves in order to obtain a copy of the warrant or to seek the return of their property, and from instigating criminal investigations based on the forced disclosure of box holders' identities. Plaintiff further seeks an order to show cause why an injunction should not issue enjoining the Government from refusing to return Plaintiff's property, from further searches or inventories of Plaintiff's property, and from instigating criminal investigations based on this search and seizure.

1

## II.

## FACTUAL BACKGROUND

**A.     USPV's Private Safe Deposit Box Service**

Since 2011, non-party U.S. Private Vaults ("USPV") has operated a facility offering private safe deposit boxes for rent at its public facility at 9182 West Olympic Blvd. in Beverly Hills.[1]  There is nothing secretive about the business; it is advertised by prominent signage and an elaborate and detailed website.

USPV's Olympic Blvd. facility houses at least several hundred safe deposit boxes of varying sizes, each secured by its own key.  USPV leases these boxes to the public on yearly leases and USPV provides security and insurance for the contents.  Notably, USPV does not keep a key to any rented boxes, which means that the only person with the ability to open the box is the renter or the renter's authorized designee.[2]

According to USPV's web site:

- USPV has been operating in Beverly Hills since 2011.

- USPV provides several advantages that are unavailable at bank safety deposit boxes:

  - All USPV boxes are insured.  Banks do not offer insurance for their boxes.

  - USPV does not hold keys to their clients' boxes.  Banks do keep a key.

  - USPV is not subject to federal banking rules that could mandate "bank holidays" or a suspension of withdrawals in case of an economic crisis.

  - Accessing a box at USPV takes much less time than at a bank.  Indeed, the facility advertises "In & out access in 5 minutes."

  - USPV boxes are not subject to probate lock out upon the death of the box owner.

---

[1]   *See* https://www.usprivatevaults.com.

[2]   *See* https://www.usprivatevaults.com/uspv-vs-bank-safe-deposit-box.

- USPV offers a wider selection of box sizes than do banks.

- Security at USPV is handled by ADT (a publicly traded security company with over $5 billion in revenue, which operates "the largest network of security professionals in the United States").[3]

**B.   Plaintiff is the lessee of at least one box at USPV**

Plaintiff maintains three safety deposit boxes at USPV.  (Declaration of Benjamin N. Gluck ("Gluck Decl.") ¶ 2.)  Plaintiff was given keys to the leased boxes and has maintained control over the boxes since the commencement of the lease.  (*Id.*)  Plaintiff keeps valuables in his boxes, including jewelry, currency, and bullion.  (*Id.*)  These items were in the boxes when the Government seized control of USPV and all of the safety deposit boxes on March 22, 2021.  (*Id.*)  Plaintiff has been unable to access either USPV or his boxes or possessions since the commencement of the Government's search on the morning of March 22, 2021.  (*Id.* ¶ 8.)

Plaintiff has chosen to pursue judicial relief pseudonymously.[4]  (Declaration of Ariel A. Neuman ("Neuman Decl.") ¶ 6.)  As noted above and as further discussed below, the Government has announced its intention to criminally investigate every person identified as a box holder at USPV.  (*Id.* ¶ 4(f).)  As further discussed below, Plaintiff should not be forced to submit to the Government's announced plan to initiate a criminal investigation before returning valuables for which the Government apparently admits it has neither probable cause nor a warrant.  In light of this announced detriment from disclosing his name, Plaintiff properly proceeds pseudonymously.  *See, e.g.*, *Does I-XXII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-68 (9th Cir. 2000) (discussing with approval cases

---

[3]   *See* https://investor.adt.com/press-releases/press-release-details/2021/ADT-Reports-Fourth-Quarter-and-Full-Year-2020-Results/default.aspx

[4]   This filing uses male pronouns only as a grammatical convenience consistent with the reference to John Doe.  Plaintiff makes no representation as to his or her gender.

*EX PARTE* APPLICATION FOR TRO ENJOINING ILLEGAL SEARCH AND SEIZURE

1   where courts permitted parties to proceed anonymously because disclosure would

2   create risk of criminal prosecution).

3   **C.    The Government's seizure of all property at USPV and its announced**

4   **intention to leverage the seizure to commence investigations of all box**

5   **holders**

6       Beginning early in the morning on Monday, March 22, 2021, at the direction

7   of the United States Attorney's Office for the Central District of California,

8   representatives of the United States Government, including the Los Angeles Field

9   Office of the FBI, executed a warrant at USPV.[5]  Agents closed the parking lot and

10  USPV to the public.  (Gluck Decl. ¶ 4.)  On Tuesday, March 23, when the agents

11  still had not left, counsel for Plaintiff visited the site and attempted to speak with an

12  agent in order to learn whether there was a warrant for Plaintiff's boxes and if so to

13  obtain a copy of the warrant pursuant to Rule 41.  (*Id.* ¶¶ 4-5.)  A police officer

14  guarding the perimeter carried counsel's message inside to the agents and returned

15  with a message that no agents would come out to speak with counsel but that

16  counsel could call a telephone number that the agents provided.  (*Id.* ¶ 5.)  The

17  number turned out to be the FBI's general Los Angeles number, where counsel left a

18  message that was never returned.  (*Id.*)

19      By March 24, with agents still occupying USPV, counsel independently

20  learned that AUSA Andrew Brown might be the AUSA on the matter.  (*Id.* ¶ 6.)

21  That day, Ariel Neuman, a principal at Bird Marella (counsel for Plaintiff) contacted

22  Mr. Brown to attempt (1) to determine whether Plaintiff's boxes had been searched,

23  _____

24  [5]   "Federal Investigation Takes Over Beverly Hills Strip Mall" *Beverly Hills Courier* (Mar. 25, 2021), available at

25  https://beverlyhillscourier.com/2021/03/25/federal-investigation-takes-over-beverly-hills-strip-mall/ ("The strip mall at the intersection of West Olympic Boulevard and

26  South Palm Drive is hardly something to gawk at—upscale by strip mall standards,

27  but still a strip mall.  But since March 22, dozens of local and federal agents have

28  taken over the lot.")

(2) to determine whether Plaintiff's property had been seized, and (3) in the event either had occurred, to obtain a copy of the warrant pursuant to Rule 41.  (Neuman Decl. ¶ 4.)

During the conversation, Mr. Brown stated:

1.  The government is seizing *all* safe deposit boxes at the site, even though these boxes are separately held by numerous unknown individuals;

2.  The government will inspect and inventory the contents of *every* box and use that information to try to identity every box's owner(s);

3.  The Government will *not* read the contents of notebooks or thumb drives that they find in these boxes (apparently because they do not have probable cause for them);

4.  A search and seizure warrant was served on the owners or management of USPV (but Mr. Brown declined to disclose either the names of the people served or their counsel);

5.  The Government will not provide the search and seizure warrant to a holder of a USPV safe deposit boxes unless and until the holder identifies himself or herself;

6.  If a holder of a safe deposit box identifies himself or herself, then the Government will commence an investigation of the holder to determine whether he or she came by the contents in his or her safe deposit boxes legally, and the holder will be required to establish his or her claim to lawful ownership of the property contained in the boxes.

7.  The Government assumes that all holders of all safe deposit boxes at USPV are engaged in illegal activity, even though the Government does not know the identity of the holders or the contents of the boxes.

(*Id.* ¶ 4.)  Mr. Neuman confirmed and continued the conversation with Mr. Brown by email, a copy of which is attached to Mr. Neuman's Declaration as Exhibit A.

The parking lot at USPV was reopened to the public as of Friday evening March 26, 2021, but USPV is still closed.  (Gluck Decl. ¶ 7.)  A sign displayed on the window reads:

(*Id.*)

The form at the website listed on the sign asks for the claimant's name, telephone numbers, email address, and street address and says that "An FBI agent will contact you for additional details." (Gluck Decl. ¶ 7.) It also contains a warning about false statements, warning of fines and imprisonment under 18 U.S.C. § 1001. (*Id.*)

On March 31, 2021, when undersigned counsel informed Mr. Brown of the impending filing of this application for TRO, Mr. Brown responded by email saying "The inventory search has already been completed." (Gluck Decl. ¶ 15.) Mr. Gluck responded by asking whether the Government would stipulate that "it will conduct no further searches (of any type) of the contents of the boxes and no further review or dissemination of information gained from any search of the contents of the boxes

1   until the court has time to consider our preliminary injunction motion." (*Id.*)

2   In response, Mr. Brown telephoned Mr. Gluck. During that conversation Mr.

3   Brown declined the proposed stipulation but said that he would consider it further

4   after reviewing the TRO papers. (*Id.* ¶ 16.) Mr. Gluck stated that Plaintiff needed

5   to file the papers as soon as possible but that if the Government were to agree to the

6   proposed stipulation, Plaintiff would inform the Court and withdraw the *ex parte*

7   application for the TRO. (*Id.*)

## III.

## LEGAL STANDARDS

10  Plaintiff here seeks relief on two grounds. First, Federal Rule of Criminal

11  Procedure 41(g) empowers the Court to order the return of unlawfully seized

12  property. Second, the Court has the inherent power to enjoin ongoing deprivations

13  of constitutional rights. Under circumstances such as those presented here, the

14  Court may grant a TRO to preserve the status quo and allow the Plaintiff to present

15  these claims to the Court on a motion for preliminary injunction.

**A.   A Temporary Restraining Order May Issue to Prevent Immediate, Irreparable Harm.**

18  A TRO may be issued upon a showing "that immediate and irreparable injury,

19  loss, or damage will result to the Plaintiff before the adverse party can be heard in

20  opposition." Fed. R. Civ. P. 65(b)(1)(A). The analyses for a TRO and a preliminary

21  injunction are "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush*

22  *& Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *see also Frontline Medical*

23  *Associates, Inc. v. Coventry Healthcare Workers Compensation, Inc.*, 620 F. Supp.

24  2d 1109, 1110 (C.D. Cal. 2009) ("The standard for a temporary restraining order []

25  and a preliminary injunction are the same."). "A plaintiff seeking a preliminary

26  injunction must establish that he is likely to succeed on the merits, that he is likely

27  to suffer irreparable harm in the absence of preliminary relief, that the balance of

28  equities tips in his favor, and that an injunction is in the public interest." *Winter v.*

1    *Natural Resources Defense Council*, 555 U.S. 7, 20 (2008).

2    The Ninth Circuit employs a "sliding scale" approach to *Winter's* four-

3    element test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th

4    Cir. 2011). Under this approach, a preliminary injunction—and, thus, a temporary

5    restraining order—may issue if the plaintiff raises at least "serious questions going

6    to the merits" and demonstrates that "the balance of hardship tips sharply in the

7    plaintiff's favor," so long as the plaintiff also satisfies the other *Winter* factors. *Id.*

8    A stronger showing of one element may offset a weaker showing of another. *Id.*

9    A preliminary injunction is customarily granted on the basis of evidence that

10   is less complete than what is presented at a trial on the merits. *University of Texas*

11   *v. Camenisch,* 451 U.S. 390, 395 (1981). The Court may consider hearsay and

12   otherwise inadmissible evidence when considering whether to issue a preliminary

13   injunction. *Republic of the Philippines v. Marcos,* 862 F.2d 1355, 1363 (9th Cir.

14   1988).

15   **B.    Fed. R. Crim. P. 41(g) Offers Relief to Anyone Whose Property Is**

16   **Impaired by a Seizure.**

17   The Complaint in this matter seeks relief pursuant to Federal Rule of Criminal

18   Procedure 41(g), which provides that a person "aggrieved by an unlawful search and

19   seizure of property or by the deprivation of property may move for the property's

20   return." Rule 41(g) provides recourse for *anyone* "whose property or privacy

21   interests are impaired by [a] seizure." *United States v. Comprehensive Drug*

22   *Testing, Inc.*, 621 F.3d 1162, 1173 (9th Cir. 2010)) (overruled in part on other

23   grounds). Accordingly, a district court may exercise its equitable jurisdiction to

24   return property seized by the federal government notwithstanding the fact that there

25   are no criminal proceedings pending against the Plaintiff. *United States v.*

26   *Martinson*, 809 F.2d 1364, 1366-67 (9th Cir. 1987). In determining when property

27   should be returned, "reasonableness under all of the circumstances must be the test

28   when a person seeks to obtain the return of property." Fed. R. Crim. P. 41(g)

8

1    Advisory Comm. Notes (1989).

2          A district court considers four factors in deciding whether to exercise

3    jurisdiction:  whether "(1) the Government displayed a callous disregard for the

4    constitutional rights of the movant; (2) the movant has an individual interest in and

5    need for the property he wants returned; (3) the movant would be irreparably injured

6    by denying return of the property; and (4) the movant has an adequate remedy at law

7    for the redress of his grievance."  *United States v. Kama*, 394 F.3d 1236, 1238 (9th

8    Cir. 2005) (quoting *Ramsden v. United States*, 2 F.3d 322, 324-325 (9th Cir. 1993))

9    (internal citation marks omitted).

10         If no criminal proceeding is pending against the movant, relief under Rule

11   41(g) is treated as a civil equitable proceeding.  *See, e.g., United States v. Ibrahim,*

12   522 F.3d 1003, 1008 (9th Cir. 2008) (citing *United States v. Ritchie*, 342 F.3d 903,

13   906 (9th Cir. 2003)) (Federal Rules of Civil Procedure apply to Rule 41(g) motions

14   filed in the absence of criminal proceedings).  This is the procedure Plaintiff has

15   followed here.

16   **C.**    **An Injunction May Issue to Prevent Further Deprivation Of**

17          **Constitutional Rights**

18         Injunctive relief should be granted where the movant proves: "(1) that it has

19   suffered an irreparable injury; (2) that remedies available at law, such as monetary

20   damages, are inadequate to compensate for that injury; (3) that, considering the

21   balance of hardships between the plaintiff and defendant, a remedy in equity is

22   warranted; and (4) that the public interest would not be disserved by a permanent

23   injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  "[T]he

24   deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"

25   *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*,

26   427 U.S. 347, 373 (1976)).

27

28

# IV.

# ARGUMENT

This is an extraordinary situation, meriting extraordinary relief.  The Court should not countenance the continued violation of Plaintiff's rights, and should grant Plaintiff's TRO to prevent further violations.  The Government has declined to stipulate to cease searching Plaintiff's possessions, even for just the period pending this Court's review of Plaintiff's requests.  The TRO requested here will preserve the status quo pending a hearing on the motion for preliminary injunction and the preliminary injunction here will preclude the Government from continuing to unlawfully deprive Plaintiff of his property.  The Court also can and should establish "ground rules" that will clarify proper procedures that can be used for the hundreds of other individual box holders who leased boxes at USPV.

## A.    The Government Is Engaging In An Ongoing Illegal Search And Seizure

The Fourth Amendment protects against unreasonable searches and seizures.  "A 'search' occurs when the government intrudes upon an expectation of privacy that society is prepared to consider reasonable is infringed.  A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."  *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  There is no question both occurred here: A search is occurring and threatens to continue occurring because the Government has declined Plaintiff's requested stipulation to suspend all searches of Plaintiff's boxes until the Court may consider Plaintiff's request for injunctive relief.  A seizure occurred when the government took Plaintiff's boxes and their contents, and the Government has announced that it will continue this seizure – even though it apparently has no probable cause or warrant to seize them – unless Plaintiff identifies himself and subjects himself to a criminal investigation in which the Government will decide whether Plaintiff came by his property "legitimately."  If Plaintiff declines to do so, the Government says it will keep the property.

1. **Plaintiff Has An Individual Fourth Amendment Right In His Boxes And The Government Cannot Search Or Seize Plaintiff's Boxes Without Probable Cause And A Warrant *Specific To Each Box***

It is well-established that holders of safe deposit boxes and similar containers have a reasonable expectation of privacy in the boxes they control, and have standing to challenge searches and seizures of an individual box. *See*, *e.g.*, *United States v. Chadwick*, 433 U.S. 1, 11 (1977) ("By placing personal effects inside a double-locked footlocker, respondents manifested an expectation that the contents would remain free from public examination."), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991); *United States v. Spilotro*, 800 F.2d 959, 962 (9th Cir. 1986) ("We begin by noting that there is no question that defendant Blasko has standing to challenge the search of his home, person, and safe deposit box."); *United States v. Wetselaar*, No. 2:11-CR-00347-KJD, 2013 WL 8206582, at *10 (D. Nev. Dec. 31, 2013) ("[A]s renters of those boxes, Defendants had a reasonable expectation of privacy in the contents, which include the space inside the box and the inner metal liner itself.").

To comport with the Fourth Amendment, probable cause must support and the warrant must precisely identify *each location* searched—in this case *each specific safe deposit box*. This principle has been articulated frequently in cases involving searches of apartment buildings and other multi-unit dwelling premises, where, as here, different portions of a premises are controlled by different people. The decision in *United States v. Hinton*, 219 F.2d 324 (7th Cir. 1955) is instructive. There, the affidavit identified people selling narcotics in an apartment building but could not identify the specific apartment in which the sales allegedly were made. *Hinton*, 219 F.2d at 325. The warrant therefore purported to permit a search of the *entire* building, including separate apartments, in order to find the target location. *Id.* Several defendants were convicted based on evidence obtained during execution of the warrant.

The Seventh Circuit reversed the convictions because the "basic requirement" of the Fourth Amendment is that "officers who are commanded to search be able from the 'particular' description of the search warrant to identify the *specific place for which there is probable cause to believe that a crime is being committed*." *Id.* at 326 (emphasis added). For Fourth Amendment purposes, "searching two or more apartments in the same building is no different than searching two or more completely separate houses" and therefore "[p]robable cause must be shown for searching each house or, in this case, each apartment." *Id.* at 325-26. The affidavit there did not establish probable cause to search the entire building because it did not contain factual allegations "to show that *each of the apartments* in the building was the residence of at least one of the persons alleged in the affidavit to have been seen selling narcotics." *Id.* at 326; *see also United States v. Clark*, 638 F.3d 89 (2d Cir. 2011) (Fourth Amendment's probable cause requirement demands that "a search warrant for a multiple-occupancy building be supported by a showing of probable cause *as to each unit*") (emphasis added); *United States v. Busk*, 693 F.2d 28 (3d Cir. 1982) (same).

In short, case law is clear that probable cause establishing only that a target or evidence is likely found in "one of several apartments in a multi-unit building" is simply not enough for Fourth Amendment purposes. "Stated another way, the probable cause requirement would be substantially diluted if a search of several living units could be authorized upon a showing that some one of the units within the description, not further identifiable, probably contained the items sought." 2 LaFave, *Search & Seizure* § 4.5(b) (6th ed.).[6]

---

[6] LaFave further explains that, by definition, if the Government can allege only that the evidence may be in one of, say, five apartments, the likelihood of it being in any one of them is simply too small to permit the search, especially if this would mean that four innocent tenants would be subject to searches. *Id.* at n.64. The instant case, with some 600 to 1000 boxes at USPV is even more extreme in its

Here, the separately controlled safety deposit boxes at USPV are exactly like the separate living units in an apartment building, except that there are many, many more separately controlled boxes than there are apartments in any building.  Just as the tenant of each apartment controls that space and therefore has a reasonable expectation of privacy in it, each of the hundreds of renters of safety deposit boxes at USPV—including Plaintiff—has a separate reasonable expectation of privacy in his or her separately controlled box or boxes.  Thus, even if the Government had probable cause to believe that some boxes at USPV contained evidence or contraband, a search warrant *could not issue* until the Government had probable cause to identify which *specific box* contained it and a warrant authorizing search and seizure of that *specific box*.

**2.     Plaintiff Should Not Be Forced To Comply With The Government's Announced Plan To Retain Possession Of All Property At USPV Until All Owners Submit To An "Investigation" To Retrieve It**

**a.     The Government Seeks to Force Plaintiff to Surrender Plaintiff's Fifth Amendment Rights To Assert Plaintiff's Fourth Amendment Rights**

A defendant cannot be forced to surrender his Fifth Amendment privilege against self-incrimination in return for the opportunity to assert his right to be free from unreasonable search and seizure.  *See Simmons v. United States*, 390 U.S. 377, 394 (1968).  In *Simmons*, the defendant sought to suppress incriminating evidence and the prosecution at trial used his testimony from the suppression hearing to prove ownership.  390 U.S. at 389.  The Supreme Court reversed:

Thus, in this case Garrett was obliged either to give up what he

---

invasion of the rights of "bystander" box holders for whom there is no probable cause whatsoever.  Moreover, because the Government has refused to provide the warrant, there is no basis to believe there is probable cause as to even one box.

believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination.  In these circumstances, **we find it intolerable that one constitutional right should have to be surrendered in order to assert another**.

*Id*. (emphasis added); *cf. Couch v. United States*, 409 U.S. 322, 328 n.* (1973) (Brennan, J. concurring).

The Ninth Circuit similarly has recognized that the identity of a client may be privileged where disclosing the client's identity would create a link in the chain of inculpation.  *See In re Horn*, 976 F.2d 1314, 1317 (9th Cir. 1992) ("Thus, for example, the identity of a client is privileged information if revelation of that identity would constitute an acknowledgement of guilt of the offense that led the client to seek legal assistance.") (quoting *Baird v. Koerner*, 279 F.2d 623, 633 (9th Cir. 1960)); *see also Matter of Residence in Oakland, California*, 354 F. Supp. 3d 1010, 1015 (N.D. Cal. 2019) ("[A] witness's 'act of production itself could qualify as testimonial if conceding the existence, possession and control, and authenticity of the documents tended to incriminate them.'").

The possessions in Plaintiff's boxes are not contraband and the Government had neither probable cause nor a warrant to search or seize them.  Nevertheless, the Government has declared that upon learning Plaintiff's name, the Government will commence a criminal investigation of Plaintiff, indeed one where Plaintiff will bear the burden of proving that he has not engaged in criminal activity in connection with this property.  This means that Plaintiff is privileged under the Fifth Amendment to decline to identify himself as the possessor or controller of the items in his boxes.

The Government seized Plaintiff's possessions without legal basis.  Plaintiff cannot be forced to provide information that will initiate and be used in a criminal investigation of him in order to assert his constitutional right to be free from unreasonable search and seizure.

### b.     The Warrant Likely Does Not Permit This Procedure

As noted several times, the Government has neither probable cause nor a

valid warrant authorizing the search or seizure of Plaintiff's possessions.  But AUSA Brown's announced plan shows that the Government intends to leverage the Government's improper search and seizure by holding Plaintiff's possessions "hostage" until Plaintiff discloses his identity and the Government investigates him.  Though Mr. Brown perhaps deserves credit for his candor, his announced plan is grossly improper and manifestly unconstitutional.  The Government cannot be allowed to take advantage of its already improper search and seizure by leveraging its Fourth Amendment violations into improper Fifth Amendment compulsion.

On information and belief, Plaintiff submits that the warrant does not permit the procedure Mr. Brown has outlined.  Note again that Mr. Brown has refused to give counsel a copy of the warrant that purports to permit the Government to open Plaintiff's boxes.  But Plaintiff presumes that the magistrate judge was likely informed that any boxes unrelated to the probable cause would be returned to their owners – or at the very least presumed that this would be the case.  And whatever procedure the magistrate judge may have authorized, Plaintiff cannot believe that the magistrate judge would have signed a warrant authorizing the government to leverage the non-probable-cause seizure to (1) force owners to disclose their names and (2) investigate them criminally and (3) return the property seized without probable cause only if the owner can convince the government of his or her innocence.  This procedure is *exactly* the opposite of the Fourth Amendment, which requires probable cause first; search and seizure only afterwards.

The Government's proposed procedure cannot be rescued from its manifest unconstitutionality by calling their searches an "inventory."  Plaintiff's boxes were seized from USPV without a warrant specifically authorizing their seizure or reflecting any probable cause to search or seize their contents; that conduct may not be condoned as mere collateral damage in a search for some other box or some other box holder's property.  Nor are the Government's proposed conditions on return of the property consistent with a mere inventory.  The Government could readily return

the property to whomever holds the key to each box.  Mr. Brown's plan thus appears almost certainly to be unauthorized by the very warrant he is currently hiding.[7]

### 3. The Government's Improper Refusal To Comply With Rule 41(f)(1)(C) Should Not Be Permitted To Frustrate Plaintiff's Attempt To Seek Judicial Review And Redress

The discussion in the preceding section illustrates the tremendous disadvantage under which Plaintiff is laboring due to the Government's refusal to provide a copy of the warrant.

As noted earlier, during the execution of the warrant, agents refused to even speak with counsel who went to try to get a copy of the warrant, and Mr. Brown flatly refused to give counsel a copy of the warrant unless counsel identified the name of the box owner.  This is improper.  Federal Rules of Criminal Procedure 41(f)(1)(C), requires that "[t]he officer executing the warrant must give a copy of the warrant . . . to the person from . . . whose premises, the property was taken or leave a copy of the warrant . . . at the place where the officer took the property." The purpose of this requirement is to "put the possibly aggrieved party on notice of the authority and purported reasons for the search, and enable him to contest it."  2 LaFave, *Search & Seizure: A Treatise On The Fourth Amendment* § 4.12(a) (6th ed.) Mr. Brown's determination to conceal this information is confirmed by his refusal to even provide the names of the owners of USPV on whom he claimed the warrant

---

[7] Indeed, any claim by the Government that it needs an inventory to protect itself and that needs to inspect the boxes to identify their owners so that items may be returned is more than a little ironic.  By seizing hundreds of boxes that it knew would not be the true target of the investigation, the Government knowingly created the very problem it now purportedly tries to solve.  From the Government's declared intention to investigate all box holders, it appears that this outcome is exactly what the Government intended.  Suffice it to say that there were any number of other methods available to the Government, including the use of a special master, taint teams, or, most of all, obtaining a valid warrant for a specific box.

1   was served.

2        Mr. Brown confirmed that the warrant here is not under seal, which means

3   that the Government has no legitimate basis to refuse to provide a copy of the

4   warrant as mandated by Rule 41.  There is simply no reason why the Government

5   should play coy with the disclosure of the warrant's locations to be searched and list

6   of items to be seized as well as its description of how this very unusual search must

7   be executed.[8]

8        The Government's improper refusal to leave a copy of the warrant where

9   Plaintiff could access it and its further refusal to give a copy to counsel strongly

10  implies that the warrant does not authorize what it is doing here.  The Government

11  should not be permitted to gain strategic advantage from its improper refusal to

12  follow the rules.  Indeed, at this preliminary stage, where Plaintiff seeks only a TRO

13  to maintain the status quo, the Government's conduct warrants the inference that its

14  conduct is inconsistent with the terms of the warrant.

15  **B.   The Court Should Enter a Temporary Restraining Order Enjoining The**

16  **     Government From Continuing to Violate Plaintiff's Constitutional Rights**

17  **     1.   Plaintiff Is Likely to Succeed on His Claims for Return of**

18  **          Plaintiff's Property and Injunctive Relief Claims**

19       The facts and applicable law here establish a strong likelihood that Plaintiff

20  will succeed on the merits of both his Rule 41(g) claim for the return of his safe

21  deposit boxes and Plaintiff's declaratory and injunctive relief claims seeking to

22  enjoin the Government from continuing to violate his constitutional rights.

23  Moreover, under the law of this Circuit, Plaintiff need show only that there are

24  "serious questions going to the merits" where, as here, the "the balance of hardship

25

26  _____

27  [8]   As to the affidavit, while Plaintiff reserves the right to seek that at a later time, for now Plaintiff seeks only the warrant, *i.e.*, the description of what may be

28  searched, what may be seized, and how.

_____

tips sharply in . . . [P]laintiff's favor," and Plaintiff demonstrates the other *Winter* factors. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

### a.   Plaintiff is Likely to Succeed on His Rule 41(g) Claim For Return of Property

Plaintiff can and will demonstrate that the Court should exercise its equitable jurisdiction to hear Plaintiff's 41(g) claim and should rule in Plaintiff's favor on the merits of that claim.

### (i)   The Court Can and Should Exercise Its Jurisdiction to Decide Plaintiff's Rule 41(g) Claim

Where, as here, no criminal proceeding is pending against a Fed. R. Crim. P. Rule 41(g) movant, a district court is to consider four discretionary factors before reaching the merits of the motion. *Ramsden v. United States*, 2 F.3d 322, 324-325 (9th Cir. 1993). Not all factors must weigh in the movant's favor in order for the district court to exercise jurisdiction; rather, the court is to engage in a balancing test. *Id.* at 326.

**First factor - the Government is displaying a callous disregard for Plaintiff's constitutional rights.** Even if the Government purportedly had authority under the warrant to seize Plaintiff's safe deposit boxes (Plaintiff does not believe it did, but has been refused a copy of the warrant in violation of Fed. R. Crim. P. 41(c)), the Government is displaying a callous disregard for Plaintiff's Fourth Amendment rights by proceeding with its stated plan to retain and "inventory," *i.e.*, search, Plaintiff's safe deposit boxes and to investigate Plaintiff criminally. As explained above, on information and belief, based on Mr. Brown's representations, the Government does not have a warrant authorizing criminal search and seizure of *Plaintiff's* specifically identified safe deposit boxes. *See Hinton*, 219 F.2d at 325. Nor does the Government have probable cause to believe that Plaintiff's possessions

represent the proceeds of some criminal activity.[9]  And by announcing that it will continue to hold Plaintiff's personal property hostage unless and until Plaintiff surrenders his Fifth Amendment rights by identifying himself and submitting to a federal investigation, the Government is displaying a callous disregard for Plaintiff's Fifth Amendment rights.  *See Simmons*, 390 U.S. at 394.

**Second factor - Plaintiff has an individual interest in and need for Plaintiff's safety deposit boxes.**  As discussed above in Section IV(A)(1), as a lessee of safe deposit boxes held at USPV, Plaintiff has privacy and individual Fourth Amendment rights in those boxes.  *Chadwick*, 433 U.S. at 11, *Spilotro*, 800 F.2d at 962.  Moreover, these boxes contain items of value and Plaintiff has a need for these valuable items – indeed, keeping the items both secure and accessible was the reason for which Plaintiff rented the safe deposit boxes at USPV's Beverly Hills location.

**Third factor - Plaintiff will be irreparably harmed if Plaintiff's property is not returned to Plaintiff.**  If the Government is allowed to proceed as it has represented it will (by retaining, potentially indefinitely, Plaintiff's safe deposit boxes unless and until Plaintiff submits to being investigated), the Government will continue to deprive Plaintiff of the use of his property and continue to violate Plaintiff's constitutional rights under the Fourth and Fifth Amendments.  As discussed above, "the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Nat'l Urb.*

---

[9]  Case law is consistent that even large amounts of cash (much less jewelry or gold) do not create probable cause without other evidence connecting the cash to wrongdoing.  *See, e.g., United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1072 (9th Cir. 1994) (noting that the standard of probable cause for forfeiture and search or seizure is the same and that "any amount of money, standing alone, would probably be insufficient to establish probable cause for forfeiture.") (superseded by statute as to procedure in forfeiture actions).

*League v. Ross*, 484 F. Supp. 3d 802, 806 (N.D. Cal. 2020) (same); *Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1282 (N.D. Cal. 2014) (recognizing that "[i]rreparable harm is presumed if plaintiffs are likely to succeed on the merits because a deprivation of constitutional rights always constitutes irreparable harm").

**Fourth factor - Plaintiff has no adequate remedy at law.**  Because the unlawful seizure of Plaintiff's safe deposit boxes is not connected to criminal proceedings against Plaintiff, Plaintiff has no other avenue by which to seek vindication of Plaintiff's rights, such as through a motion to suppress the unlawfully seized property or through challenging a forfeiture proceeding.  *See*, *e.g.*, *Cox v. United States*, No. CV 07-1200-PHX-SMM, 2008 WL 477877, at *6 (D. Ariz. Feb. 19, 2008) (rejecting the government's argument that the movant had an adequate remedy at law because he could challenge the legality of search warrants *if* criminal proceedings ever were instituted against the movant).

### (ii)      The Facts and Law Favor Granting Plaintiff's Request For Return of Plaintiff's Personal Property

Plaintiff also is likely to succeed on the merits of the Rule 41(g) claim.  The test in this Circuit for return of property is one of "reasonableness under all of the circumstances."  *Ramsden*, 2 F.3d at 326.  Here, the Government has *no* reasonable or legitimate interest in retaining Plaintiff's safe deposit boxes.  On information and belief, Plaintiff was not the target of the Government's investigation in connection with which the warrant issued and it appears the warrant the Government obtained is invalid to the extent it purported to permit the Government to execute the search without probable cause for a *specific* box.  Moreover, it is wholly unreasonable for the Government to retain Plaintiff's boxes, for which it appears to have neither probable cause nor a warrant, and to demand that Plaintiff submit to investigation to seek their return.

          **b.**     **Plaintiff is Likely to Succeed on Plaintiff's Declaratory and Injunctive Relief Claims**

The facts and law favor Plaintiff on Plaintiff's declaratory and injunctive relief claims.[10]  The Government's stated plan would result in continuing invasions and violations of Plaintiff's Fourth and Fifth Amendment rights to be free from unreasonable searches and seizures and to be afforded due process, unless and until Plaintiff agrees to surrender Plaintiff's Fifth Amendment rights against self-incrimination.  Both declaratory and injunctive relief are necessary to put an end to this and enjoin the Government from retaining Plaintiff's personal property.

          **2.**     **Plaintiff Will Continue To Suffer Immediate and Irreparable Harm In the Absence of the Preliminary Relief Requested Here**

"It is established that violation of an individual's constitutional right to be free from unreasonable searches protected by the Fourth Amendment causes irreparable harm."  *Connelly v. Horner*, No. C-88-5085-DLJ, 1989 WL 125011, at *2 (N.D. Cal. June 15, 1989) (citing *LaDuke v. Nelson,* 762 F.2d 1318, 1330 (9th Cir. 1985), *modified on other grounds,* 796 F.2d 309 (9th Cir. 1986); *see also Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Nelson v. Nat'l Aeronautics & Space Admin.*, 530 F.3d 865, 882 (9th Cir. 2008) ("Unlike monetary

---

[10]  Plaintiff has standing to seek injunctive and declaratory relief:  Plaintiff "has suffered or is threatened with a 'concrete and particularized' legal harm [seizure and retention of Plaintiff's safe deposit boxes in violation of Plaintiff's constitutional rights], coupled with 'a sufficient likelihood that [Plaintiff] will again be wronged in a similar way [the continued retention, search, and conditioned return of Plaintiff's boxes in violation of Plaintiff's constitutional rights].'"  *Canatella v. State of California*, 304 F.3d 843, 852 (9th Cir. 2002) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

1   injuries, constitutional violations cannot be adequately remedied through damages

2   and therefore generally constitute irreparable harm."), *rev'd on other grounds*, 562

3   U.S. 134 (2011).

4         The wrong that the Fourth Amendment is designed to prevent is complete,

5   and the injury irreparable, when the Government seizes, views the contents of, and

6   retains Plaintiff's property and the property of others, presumably without probable

7   cause.  But the Government's announced plan to refuse to return the material

8   without disclosure of Plaintiff's name means that the deprivation of property is

9   ongoing.  The Court should enjoin the Government from continuing to violate

10  Plaintiff's constitutional right to be free from unreasonable searches and seizures

11  and from being forced to surrender his Fifth Amendment rights to seek redress for

12  violations of his Fourth Amendment rights.

13        **3.**    **Granting Plaintiff's Requested Preliminary Relief Is In The Public**

14              **Interest**

15        The balance of equities and public interest sharply incline in Plaintiff's favor:

16  "it is always in the public interest to prevent the violation of a party's constitutional

17  rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation and

18  internal quotation marks omitted).  Where, as here, the Government has intruded

19  and stated that it will continue to intrude on Plaintiff's constitutional rights (and

20  those of apparently hundreds of other individuals holding boxes at USPV), it is in

21  the public interest to enjoin the continuation of such violations.

22                          **V.**

23              **RELIEF REQUESTED**

24        Plaintiff requests that the Court enjoin further interference with Plaintiff's

25  possessory and privacy rights.  But it is difficult to ascertain the exact nature of that

26  relief because the Government refuses to disclose the warrant.  Nevertheless, some

27  points already are clear enough:

28        A TRO should issue preserving the status quo; specifically:

- The Government should make reasonably available at the search location copies of the search warrant and do so in a manner that allows box-holders or their counsel to obtain a copy without requiring them to disclose the box-holder's identity.

- The Government should cease the inspection of the contents of any box over which it does not have individualized probable cause specific to that box and a search warrant specific to that box.

- The Government should be enjoined from instigating investigations or using in any investigation any information it gained from inspecting the contents of boxes over which it did not have individualized probable cause and a warrant specifically identifying that box.

- The Government should be enjoined from advising individuals that they must provide information to the Government as a condition to gaining return of their property.

In issuing a preliminary injunction, the Court should order that:

- The Government return any such box to USPV in such a manner that the original owner may access it as he or she did before the search.

- To the extent the government has already irreparably altered the boxes, such as by drilling them open in a manner that will not allow the box-holder's keys to work, the Government should be required to use a special master that will implement a mechanism for confirming the identity of any box-holder and allowing for the return of their property without requiring them to disclose their names to the Government.

- To the extent there is any dispute about whether the contents of any returned box are damaged or missing due to the Government's actions, such issues should be referred to a special master for consideration in a manner that protects the box holder's identity.  The Government should provide the Special Master with any and all records they created regarding the inventory of the boxes at issue.

## VI.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully urges the Court to issue the Order to Show Cause regarding issuance of a preliminary injunction to prevent Respondents from continuing to violate Plaintiff's Fourth and Fifth Amendment rights and issue the Temporary Restraining Order to preserve the status quo pending a hearing on that motion.

23

1

2    DATED:  March 31, 2021                 Respectfully submitted,

3
                                            Benjamin N. Gluck
4                                           Ashley D. Bowman
                                            Bird, Marella, Boxer, Wolpert, Nessim,
5                                           Drooks, Lincenberg & Rhow, P.C.

6

7

8                                           By:  _____

9                                                     Benjamin N. Gluck
                                                  Attorneys for Plaintiff
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*EX PARTE* APPLICATION FOR TRO ENJOINING ILLEGAL SEARCH AND SEIZURE