TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
ANDREW BROWN (Cal. Bar No. 172009)
Assistant United States Attorney
Major Frauds Section
      1100 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone:  (213) 894-0102
      Facsimile:  (213) 894-6269
      E-mail:    andrew.brown@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE,<br><br>          Plaintiff,<br><br>               v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>          Defendants. | No.  2:21-cv-02803-RGK-MAR<br><br>GOVERNMENT'S OPPOSITION TO *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE; DECLARATIONS OF AUSA BROWN AND SA BAILEY DRESS; EXHIBIT |

     The government hereby opposes John Doe's ex parte application

for a temporary restraining order and order to show cause.

 Dated: April 2, 2021          Respectfully submitted,

                               TRACY L. WILKISON
                               Acting United States Attorney

                               BRANDON D. FOX
                               Assistant United States Attorney
                               Chief, Criminal Division

                               /s/ Andrew Brown
                               _____
                               ANDREW BROWN
                               Assistant United States Attorney

                               Attorneys for Plaintiff
                               UNITED STATES OF AMERICA

## MEMORANDUM OF POINTS AND AUTHORITIES

A plaintiff who seeks to remain anonymous asks this Court to order the government not to conduct a criminal investigation of him or his unspecified property.  He asserts, erroneously, that the government has exceeded the scope of a warrant he has not seen and that he falsely claims is not under seal.  He argues that a failure to grant him a temporary restraining order ("TRO") and issue an order to show cause ("OSC") re preliminary injunction would cause irreparable harm even though, as he acknowledges, his claimed property has merely been moved from one storage facility (U.S. Private Vaults, which rents safety deposit boxes anonymously) to another (a secure warehouse controlled by the FBI), and that no searches of his property are now occurring or are planned.  The Court should decline the anonymous plaintiff's extraordinary request to halt a criminal investigation, and decline both the OSC and the TRO.

### A.   BACKGROUND REGARDING U.S. PRIVATE VAULTS

U.S. Private Vaults ("USPV") offers a unique service in California:  the anonymous rental of safety deposit boxes.  While banks and other private vault companies offer similar services at much lower prices, none permit their customers to remain anonymous.  It is this anonymity that USPV advertises on its website to attract customers: "Complete Privacy; Biometric Identification; No ID Required."  www.usprivatevaults.com.  By providing and promoting total anonymity, USPV caters to and attracts criminals, who seek to keep their identities and the source of their cash beyond the reach of law enforcement and the IRS.

USPV's website states, "Our business is one of very few where **we don't even want to know your name**.  For your privacy and the security of your assets in our vault, **the less we know the better**." (*Id.*) In a posting entitled, "Four Reasons to Store Your Gold At USPV," USPV argues: "Banks require clients to provide their social security number and a photo identification as a condition for renting a safe deposit box. Your information is then filed in the bank's central data system. This information can be easily accessed by government agencies (such as the IRS) or attorneys armed with court orders. If no one is aware you have a safe deposit box, the contents (your gold) are much safer."  It goes on to explain that, "As government chartered institutions, banks are now required to file 'suspicious activity reports.' . . . . U.S. Private Vaults is not subject to federal banking laws and would only cooperate with the government under court order."

**B.    FACTS**

The Grand Jury indicted USPV for conspiring with its customers to laundering money, distribute drugs, and structure financial transactions to avoid currency reporting requirements.  (Exh.)

The government obtained a sealed criminal seizure warrant for, among other things, the nests of safety deposit boxes located at USPV.  During the week of March 22 through 26, federal agents executed the seizure warrant and removed the nests of safety deposit boxes, inventorying their contents in the process, as authorized in the seizure warrant and discussed in the affidavit supporting it. (Brown Decl. ¶ 3).  The inventory was completed on site.  Agents left USPV on March 26, 2021.  While the anonymous plaintiff declines to allege which safety deposit boxes are his, all the inventory

searches were completed by March 26, 2021, so his property will not be searched again, absent additional justification, such as a search warrant for a specific box or boxes.  (Bailey Dress Decl. ¶ 2).  The inventory of the contents of the boxes revealed, among other items, firearms, illegal drugs, and anonymous stores of wealth, mostly cash.  The most frequently inventoried item was cash in the form of stacks of $100 bills, often filling the entire box, and exceeding $1 million in the largest boxes.  Drug detecting dogs alerted to most, but not all, of the cash stashes.  (Bailey Dress Decl. ¶ 3).

### C.   THE ANONYMOUS PLAINTIFF HAS NOT ESTABLISHED STANDING

As a threshold matter, plaintiff lacks standing to pursue the relief he seeks.  By failing to identify himself or claim any property seized, he has not established that he is a "person aggrieved" for purposes of Rule 41(g).  To qualify, plaintiff must demonstrate a violation of his own Fourth Amendment rights.  *See United States v. Salvucci*, 448 U.S. 83, 95 (1980); *United States v. Cella*, 568 F.2d 1266, 1281 (9th Cir. 1977).  Because he must show that "he himself was the victim of an invasion of privacy" or property rights, *Cella*, 568 F.2d at 1281, he cannot hide behind a cloak of anonymity.

Plaintiff attempts to establish standing by having his attorneys assert, without personal knowledge, that they believe he rented safety deposit boxes at USPV.  Attorney Neuman states "I am informed that John Doe rents boxes," in paragraph 2 of his declaration.  Attorney Gluck just asserts that the anonymous plaintiff rents safety deposit boxes.  These declarations lack a foundation and are inadmissible hearsay.  L.R. 7-7, "Declarations shall contain only factual, evidentiary matter." *Bank Melli Iran v.*

3

*Pahlavi*, 58 F.3d 1406, 1412-13 (9th Cir. 1995) (a declaration of an attorney must establish personal knowledge, not knowledge based on hearsay) ("the Banks' response to Pahlavi's evidence was information and belief declarations from their counsel [and so] were entitled to no weight because the declarant did not have personal knowledge"). The need for personal knowledge is underlined in this case by the loose manner in which the anonymous plaintiff's attorneys have described his connection to the vault, asserting in the afternoon of March 31 that he had "five" boxes at USPV (Brown Decl. ¶ 4), and later that night filing papers with the court saying he had only "three."  (Dkt. 7, page 11).

Moreover, the anonymous plaintiff has not even claimed standing as to all of the safe deposit boxes.  Yet he refuses to identify the boxes he claims an interest in, and asks the court to order a halt to investigations stemming from the inventorying of all the boxes, which necessarily involves several hundred in which he claims no possessory interest whatsoever.

### D.   PLAINTIFF HAS NOT ESTABLISHED A BASIS FOR INTERFERING WITH A CRIMINAL INVESTIGATION OR ANY IRREPARABLE INJURY

The standard for issuing a TRO is substantially identical to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Preliminary injunctive relief is "an extraordinary remedy," *Sociedad Anonima Vina Santa Rita v. U.S. Dep't of the Treasury*, 193 F. Supp. 2d 6, 13 (D.D.C. 2001), that "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (citations omitted).

Plaintiff "must establish that she is likely to succeed on the merits, that she is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in her favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977).

The anonymous plaintiff here seeks, in effect, to enjoin a criminal investigation.  In so doing, he "'bears an almost insurmountable burden.'"  *Olagues v. Russoniello*, 770 F.2d 791, 800 (9th Cir. 1985) (quoting *LaRouche v. Webster*, 566 F. Supp. 415, 417 (S.D.N.Y. 1983)).  That is because criminal investigatory decisions are committed to the Executive Branch, and intruding upon that Executive Branch function risks violating the separation of powers.  *Id.* at 799; *see also United States v. Nixon*, 418 U.S. 683, 693 (1974) ("[T]he Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case[.]"); *United States v. Derrick*, 163 F.3d 799, 824-25 (4th Cir. 1998) ("The caselaw is legend from the Supreme Court and the courts of appeals that the investigatory and prosecutorial function rests exclusively with the Executive."); *United States v. Olson*, 504 F.2d 1222, 1225 (9th Cir. 1974) (separation of powers commands "that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions").  Hence, "only in extraordinary circumstances" may courts "entertain an action to enjoin a prosecutor's investigatory activities." *Olagues*, 770 F.2d at 799.  Plaintiff must show "egregiously illegal conduct" supported by a "clear basis in fact

and law" supporting the extraordinary remedy he seeks.  *Id.* at 799-800 (citations omitted).  Courts do not function as a "'super prosecutor' empowered to monitor all prosecutorial activities on a day-to-day basis, absent compelling, extraordinary circumstances."  *Id.* at 803.

Here, the government obtained a federal criminal seizure warrant for the nests of safety deposit boxes which discussed inventorying the contents of the individual boxes.  The judiciary thereby already fulfilled its role of assessing probable cause and found that it was established.  It is not now the function of the courts to oversee or interfere with the government's ongoing investigation.  *See Olagues*, 770 F.2d at 799-801; *United States v. Burzynski Cancer Rsch. Inst.*, 819 F.2d 1301, 1312 (5th Cir. 1987); *LaRouche*, 566 F. Supp. at 417-18.  Plaintiff fails to establish circumstances so extraordinary as to permit judicial interference with the government's investigation.

Even if judicial intervention were allowed, it would be unwarranted.  Most glaringly, plaintiff fails to establish irreparable harm.  Such harm is necessary to warrant either a TRO or relief under Rule 41(g).  *See Winter*, 555 U.S. at 20; *Ramsden v. United States*, 2 F.3d 322, 325 (9th Cir. 1993).   "The mere threat of prosecution is not sufficient to constitute irreparable harm."  *Ramsden*, 2 F.3d at 326.

Plaintiff's claim that he is irreparably harmed by the "deprivation of constitutional rights" (Ex Parte at 9) mischaracterizes the case he cites.  The plaintiffs in *Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012), were Latino individuals in a county where the sheriff had adopted a policy of racial

6

profiling.  *Id.* at 994.  They were thus subject to repeated

constitutional violations.  This case involves nothing of the sort;

the inventorying of the contents has been completed.  And the

contents of the safety deposit boxes remain safe in storage.

### E.   PLAINTIFF IMPROPERLY SEEKS THE IDENTICAL RELIEF BY TRO AND PRELIMINARY INJUNCTION

Rather than maintaining the status quo, plaintiff's proposed

TRO would actually grant him all of the relief he is seeking in the

proposed preliminary injunction.  Indeed, the relief sought in the

proposed TRO is word-for-word the same as the relief requested in

the proposed preliminary injunction.  Even if plaintiff's moving

papers established his standing—which they do not—the only relief

that would be appropriate in a TRO would be an order that government

not conduct further review of the boxes in which plaintiff claims an

interest pending resolution of his application for a preliminary

injunction.  However, plaintiff has not provided the court with any

basis for identifying those boxes.  And plaintiff clearly has no

standing to object to a search or continued investigation of boxes

in which he claims no interest.  Thus, there is no basis for either

a temporary restraining order or an OSC re preliminary injunction.

In any event, the government completed its inventory search of

the contents of the safety deposit boxes seized from USPV, which is

an additional reason neither a TRO nor an OSC is appropriate here.

### F.   PLAINTIFF HAS NOT DEMONSTRATED LIKELIHOOD OF SUCCESS ON THE MERITS

Ordinarily, Rule 41(g) is used to seek the return of seized

property after an indictment has been issued.  *Ramsden v. United

States*, 2 F.3d 322, 324 (9th Cir. 1993).  District Courts, however,

have the power to entertain motions to return property seized by the

government when no criminal proceedings are pending against a movant. *Id.* "These motions are treated as civil equitable proceedings, and, therefore, a district court must exercise 'caution and restraint' before assuming jurisdiction." *Id.* (quoting *Kitty's East v. United States*, 905 F.2d 1367, 1370 (10th Cir. 1990)); *see also Blinder, Robinson & Co., Inc. v. United States*, 897 F.2d 1549, 1557 (10th Cir. 1990) ("resort to the court's equitable powers to challenge the constitutionality of a search and to obtain the return of property should be reserved for extraordinary situations, not ordinary ones"); *Kiesel Company, Inc. v. Householder*, 879 F.2d 385, 389 (8th Cir. 1989)(such remedies "are extraordinary, and they must be used with restraint"); *Meier v. Keller*, 521 F.2d 548, 554 (9th Cir. 1975 (the court should only employ the "unique power" of an exercise of its equitable jurisdiction, if at all, with "caution and restraint").

The Ninth Circuit has noted that in order to "prevent the district courts from exercising their equitable jurisdiction too liberally," certain factors must be considered before the district court can reach the merits of a pre-indictment Rule 41(g) motion. *Ramsden*, 2 F.3d at 324. These factors include:

1) Whether the movant has an individual interest in and need for the property he wants returned;

2) Whether the movant would be irreparably injured by denying return of the property;

3) Whether the movant has an adequate remedy at law for the redress of grievances; and

4) Whether the government displayed a callous disregard for the constitutional rights of the movant.

*Id.* at 325 (citing *Richey v. Smith*, 515 F.2d 1239, 1243-44 (5th Cir. 1975); *Kiesel Company, Inc.*, 879 F.2d at 387 (Movant must establish callous disregard of the Fourth Amendment, irreparable injury if relief is not granted, and lack of an adequate remedy at law); *Kitty's East*, 905 F.2d at 1370-71 (Movant must establish irreparable injury if he is deprived of his property and lack of an adequate remedy at law).

Here, the anonymous plaintiff has not even identified the property he wants back, let alone established a need for those items, which were already in storage.  Similarly, as discussed earlier, he has not demonstrated irreparable injury if those unspecified items are not returned.  Moreover, he does have other remedies.  He could, for example, make an administrative claim to the FBI for the return of his claimed property—he just does not want to.  Similarly, he could challenge the seizure of the contents of the boxes in either a criminal case against him, or in a forfeiture proceeding against the contents.

Of course, the anonymous plaintiff has made it impossible to discuss the likelihood of these events by refusing to identify either himself or his boxes.  Indeed, it would be reckless for the Court to order the return of any property here, for the Court has no way of knowing whether the anonymous plaintiff actually has a property interest in anything; the true owner could show up later.

Finally, as discussed previously, there has been no violation of his rights, let alone a callous one:  the contents of the boxes were taken in accordance with the procedures set forth in a federal criminal seizure warrant issued by a magistrate.  Accordingly, the anonymous plaintiff's Rule 41(g) motion will fail.

### G.   CONCLUSION

The government seized the nests of safety deposit boxes because there was overwhelming evidence that USPV was a criminal business that conspired with its criminal clients to distribute drugs, launder money, and structure transactions to avoid currency reporting requirements, among other offenses.  This has been borne out by the results of the inventory of the safety deposit boxes, which yielded fentanyl, OxyContin, firearms--and mostly huge stacks of $100 bills to which drug dogs alerted.  To be sure, some of the customers of USPV are honest citizens to whom the government wishes to return their property.  But the majority of the box holders are criminals who used USPV's anonymity to hide their ill-gotten wealth. To distinguish between honest and criminal customers, the government must examine the specific facts of each box and each claim, precisely what the anonymous plaintiff wants to prevent by refusing to disclose not only his identity, but even the specific boxes he claims are his.  The Executive Branch is tasked with investigating criminal leads.  The public interest demands that the government pursue these leads vigorously.

Plaintiff has failed to establish standing, the likelihood of irreparable harm or success on the merits, or that his proposed injunction is in the public interest, among other requirements. Accordingly, his *ex parte* application for an OSC and for a TRO should be denied

## <u>DECLARATION OF AUSA ANDREW BROWN</u>

I, Andrew Brown, declare as follows:

1.    I am the Criminal Assistant United States Attorney assigned to the investigation around U.S. Private Vaults.

2.    I sought and obtained a sealed federal seizure warrant for certain business equipment at U.S. Private Vaults including the nests of safety deposit boxes there.  The warrant is still sealed, but the sealing order permits the executing agents to serve it, as they are obliged to.

3.    The affidavit in support of the warrant and the warrant itself discussed the agents inventorying the property contained in the individual safety deposit boxes within the nests, in accordance with the written inventory policies of the seizing agency, here the FBI.  They also discussed looking for contact information for the boxholders to notify them of the seizure so that they could seek the return of their property.

4.    In the afternoon of March 31, 2021, Benjamin Gluck told me on the telephone that his client had five safety deposit boxes at U.S. Private Vaults, which I recorded in my notes at the time.

5.    I have attached a copy of the indictment against USPV.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on April 2, 2021.

/s Andrew Brown
AUSA ANDREW BROWN

11

**DECLARATION OF SA KATHRYN E. BAILEY DRESS**

I, SA Kathryn E. Bailey Dress, declare as follows:

1.    I am a Special Agent with the FBI.

2.    I personally participated in the inventorying of the contents of the safety deposit boxes at U.S. Private Vaults.  The inventory was completed on March 26, 2021.  No further inventory inspection occurred after that date, nor would it make any sense: it was a tremendous amount of work and it has already been done.

3.    While inventorying the contents of the safety deposit boxes, agents recovered drugs including fentanyl and OxyContin, firearms including a Glock, and a variety of ways of storing wealth anonymously, such as gold bullion and especially cash, usually in $100 bills.  Most of the boxes which were not empty contained stacks of $100 bills; many of the boxes were filled with such stacks.  The largest boxes typically contained over $1 million in cash each. Drug detecting dogs alerted to most of the stashes of cash, but not all.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on April 2, 2021.

/s *Kathryn E. Bailey Dress*
SA KATHRYN E. BAILEY DRESS

FILED
CLERK, U.S. DISTRICT COURT

03/09/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: ___DM___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2020 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 2:21-cr-00106-MCS |
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1956(h): Conspiracy to Launder Money; 21 U.S.C. § 846: Conspiracy to Distribute Controlled Substances; 18 U.S.C. 371: Conspiracy to Structure Transactions; 18 U.S.C. § 982(a)(1), 21 U.S.C. §§ 853 and 881(a)(6), 28 U.S.C. § 2461(c) and 31 U.S.C. § 5317(c): Criminal Forfeiture] |
| U.S. PRIVATE VAULTS, INC., California Corporate Number C3405297, | |
| Defendant. | |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1956(h)]

A.    INTRODUCTORY ALLEGATIONS

     1.    At times relevant to this Indictment:

          a.    Defendant U.S. PRIVATE VAULTS, INC. ("USPV"), a Nevada Corporation registered with the California Secretary of State, was in the business of renting safety deposit boxes to individuals who wished to do so anonymously.

          b.    Co-conspirator USPV Officer was an officer of USPV and

EXHIBIT

1    one of its owners.  USPV Officer dealt in marijuana, in violation of

2    the laws of California, as well as cocaine.

3         c.   Co-conspirator USPV Manager was the manager of USPV.

4    USPV Manager helped USPV Officer arrange drug deals within USPV, and

5    helped USPV customers avoid detection by law enforcement, including

6    by advising them to structure their cash purchases to avoid reporting

7    requirements.

8         d.   Co-conspirator Gold Business was a dealer in precious

9    metals and jewelry, and shared the same space as USPV, as well as

10   some employees.  Gold Business helped USPV customers convert their

11   cash into gold, and structured their cash transactions to avoid

12   federal reporting requirements.

13        e.   Co-conspirator USPV Representative One was a

14   representative of USPV, and an owner of co-conspirator Gold Business.

15   USPV Representative One instructed USPV customers how to structure

16   transactions to avoid federal reporting requirements.

17        f.   Co-conspirator USPV Representative Two was a

18   representative of USPV, and an owner of co-conspirator Gold Business.

19   USPV Representative Two instructed USPV customers how to structure

20   transactions to avoid federal reporting requirements.

21   B.   THE OBJECTS OF THE CONSPIRACY

22        2.   Beginning in or before 2019, and continuing through the

23   date of this Indictment, in Los Angeles County, within the Central

24   District of California, and elsewhere, defendant USPV conspired with

25   others known and unknown to the Grand Jury to launder money, in

26   violation of Title 18, United States Code, Section 1956, namely:

27        a.   to knowingly conduct and attempt to conduct financial

28   transactions involving the proceeds of a specified unlawful activity,

that is, the distribution of controlled substances, with the intent to promote the carrying on of that specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

b.   to knowingly conduct and attempt to conduct financial transactions involving the proceeds of specified unlawful activity, that is, the distribution of controlled substances, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

c.   to knowingly conduct and attempt to conduct financial transactions involving the proceeds of specified unlawful activity, that is, the distribution of controlled substances, knowing that the transactions were designed in whole or in part to avoid a transaction reporting requirement under Federal law, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii).

C.   <u>MANNER AND MEANS OF THE CONSPIRACY</u>

3.   The objects of the conspiracy were carried out and were to be carried out, in substance, as follows:

a.   Defendant USPV would adopt business practices that attracted customers in possession of proceeds from criminal offenses, including drug trafficking, and not law-abiding persons.  Such practices included: (1) touting the anonymity of the safety deposit rentals that defendant USPV would provide, including by advertising "we don't even want to know your name"; (2) boasting that, unlike banks, its anonymous safety deposit box rentals did not require customer information that "can be easily accessed by government agencies (such as the IRS)"; (3) making arrangements for the payment

3

EXHIBIT

of the rental fees in cash and other ways that would be untraceable;
(4) issuing safety deposit box keys that were unmarked and unnumbered
so that law enforcement could not determine that the keys unlocked
safety deposit boxes at USPV; and (5) charging safety deposit box
rental rates several times higher than those at banks.

b.   USPV Officer would capitalize defendant USPV with the
proceeds of his illegal drug trafficking.

c.   USPV Officer would invite other drug traffickers who
knew and trusted him because of his illegal drug trafficking to store
the proceeds of their drug trafficking at defendant USPV.

d.   Employees of defendant USPV would conduct counter
surveillance of the neighborhood and warn customers when they
observed law enforcement.

e.   Agents of defendant USPV would instruct customers to
structure transactions to avoid currency transaction reports
including by purchasing gold and other precious metals through Gold
Business, which would structure transactions and not file required
currency reports.

f.   If agents of defendant USPV learned that law
enforcement was interested in searching or seizing the contents of a
particular customer's safety deposit box, they would attempt to warn
the customer, delay law enforcement, or even remove all but a nominal
amount of cash from the box for the customer, to prevent law
enforcement from discovering and seizing the bulk of the cash.

g.   Defendant USPV would deposit the cash proceeds it
received from its customers for safety deposit box rentals, which
included proceeds from the distribution of controlled substances,
into its bank account, and then use those proceeds to maintain USPV's

EXHIBIT

1   anonymous storage facilities for its criminal customers.

2          h.   USPV Officer and USPV Manager would negotiate drug

3   deals illegal under California law within the secured space of USPV,

4   and USPV Officer would store the cash proceeds from drug deals within

5   a safety deposit box at USPV.

6          i.   USPV Manager would accept cash purportedly from

7   illegal drug sales, and structure transfers of it to Gold Business in

8   amounts not greater than $10,000 at a time in exchange for wire

9   transfers that purported to be for the sale of precious metals.

                              COUNT TWO

                         [21 U.S.C. § 846]

    4.    The Grand Jury realleges paragraph 1 of this Indictment
here.

A.   <u>OBJECTS OF THE CONSPIRACY</u>

    5.    Beginning in or before 2019, and continuing through the
date of this Indictment, in Los Angeles County, within the Central
District of California, and elsewhere, defendant U.S. PRIVATE VAULTS,
INC. conspired with others known and unknown to the Grand Jury to
distribute controlled substances, including marijuana, a Schedule I
controlled substance, and cocaine, a Schedule II narcotic drug
controlled substance, in violation of Title 21, United States Code,
Sections 841(a)(1), (b)(1)(C), and (b)(1)(D).

B.   <u>MANNER AND MEANS OF THE CONSPIRACY</u>

    6.    The objects of the conspiracy were carried out, and to be
carried out, as described in paragraph 3 of this Indictment, which
the Grand Jury realleges here.

C.   <u>OVERT ACTS</u>

    7.    In furtherance of the conspiracy and to accomplish the
objects of the conspiracy, on or about the following dates, defendant
USPV, acting through its officers and managers, committed various
overt acts within the Central District of California, including but
not limited to the following:

    <u>Overt Act No. 1</u>:  On June 28, 2019, USPV Manager distributed
within USPV's business location six different butane hash oil vape
cartridges containing THC to someone he believed to be a drug
trafficker, but who was, in fact, a confidential informant working
with law enforcement ("Confidential Informant 3"), as samples of what

                                  6
                              EXHIBIT

1  defendant USPV could provide in bulk.

2      <u>Overt Act No. 2</u>:  On July 26, 2019, USPV Officer met

3  Confidential Informant 3 within USPV to sell him 1,000 vape

4  cartridges containing THC.  USPV Officer delivered the cartridges in

5  the parking lot of USPV, and received in exchange $8,000 in cash

6  within USPV's business location.

7      <u>Overt Act No. 3</u>:  On or about December 11, 2019, during

8  discussions for the sale of cocaine, USPV Officer instructed the

9  buyer, Confidential Informant 3, to use a wireless communication

10  application called "Signal," which is encrypted to communicate with

11  him regarding the transaction.

12      <u>Overt Act No. 4</u>:  On or about December 16, 2019, USPV Officer

13  instructed Confidential Informant 3 to come to USPV to complete the

14  exchange.

15      <u>Overt Act No. 5</u>:  On or about December 16, 2019, USPV Manager

16  called Confidential Informant 3 and explained that co-conspirator

17  USPV Officer was not being careful enough, and could bring unwanted

18  law enforcement attention to defendant USPV by conducting this drug

19  deal onsite.

20      <u>Overt Act No. 6</u>:  On or about December 18, 2019, USPV Officer

21  sold an ounce of cocaine to Confidential Informant 3 through

22  intermediaries.

23

24

25

26

27

28

7

EXHIBIT

COUNT THREE

[18 U.S.C. § 371]

8.    The Grand Jury realleges paragraph 1 of this Indictment here.

A.   OBJECTS OF THE CONSPIRACY

9.    Beginning in or before 2019, and continuing through the date of this Indictment, in Los Angeles County, within the Central District of California, and elsewhere, defendant U.S. PRIVATE VAULTS, INC. conspired with others known and unknown to the Grand Jury to knowingly and for the purpose of evading the reporting requirements of Section 5331 of Title 31, United States Code, and the regulations promulgated thereunder: (1) cause and attempt to cause a nonfinancial trade or business to fail to file a report required under Section 5331 of Title 31, and any regulation prescribed under any such Section, in violation of Title 31, United States Code, Section 5324(b)(1); and (2) structure, assist in structuring, and attempt to structure and assist in structuring, transactions with one or more nonfinancial trades or businesses, in violation of Title 31, United States Code, Section 5324(b)(3).

B.   MANNER AND MEANS OF THE CONSPIRACY

10.   The objects of the conspiracy were carried out, and to be carried out, as described in paragraph 3 of this Indictment, which the Grand Jury realleges here.

C.   OVERT ACTS

11.   In furtherance of the conspiracy and to accomplish the objects of the conspiracy, on or about the following dates, defendant USPV, acting through its officers and managers, committed various overt acts within the Central District of California, including but

8

EXHIBIT

not limited to the following:

Overt Act No. 1:  On December 4, 2019, Gold Business sold jewelry for $11,900 in cash to a customer of USPV who was also a confidential informant working with law enforcement ("Confidential Informant 1"), and did not file the required IRS Form 8300.

Overt Act No. 2:  On January 13, 2020, USPV Representative One told a customer of USPV who was also a confidential informant working with law enforcement ("Confidential Informant 4"), and who expressed an interest in buying $20,000 worth of precious metals in cash, to purchase only $10,000 at a time to avoid paperwork.

Overt Act No. 3:  On January 28, 2020, USPV Representative Two told a DEA agent who was posing as a USPV customer and said he wanted to purchase $18,000 in gold, "I recommend you stay under $10,000 in cash and then you could just do some one day, and a few days later you could do the other," and explained, "If you buy less than $10,000 then there's no form."

Overt Act No. 4:  On January 29, 2020, USPV Manager instructed Confidential Informant 3, who wanted to buy gold to pay a "skante" debt "down south," meaning a debt in Mexico for methamphetamine, to keep his purchases under $10,000 each:  "That way you don't have to give no social security, no ID. All that shit goes to the IRS."  USPV Manager introduced Confidential Informant 3 to co-conspirator USPV Representative One to purchase the gold.

Overt Act No. 5:  On January 29, 2020, USPV Representative One explained to Confidential Informant 3 and his friend, who was actually an undercover police officer ("Undercover Officer"), that it was better to space out his cash purchases and keep each one under

9

EXHIBIT

$10,000:  "Don't come in every day. . . . what they look for is a pattern of someone who with intention is trying to get around . . ."

Overt Act No. 6:  On January 29, 2020, when Undercover Officer explained that he needed more than $10,000 worth of gold quickly, USPV Manager suggested that he split the purchase between himself and Confidential Informant 3, so that each purchase would be under $10,000 individually.  USPV Representative One agreed to the ruse "as long as you hand me the money" separately and fill out receipts for two separate transactions.  USPV Representative One also agreed that Undercover Officer could pick up the total gold purchase alone the following day.

Overt Act No. 7:  On January 29, 2020, USPV Representative One accepted first $9,900 in cash from Undercover Officer and then another $5,000 which Undercover Officer handed to Confidential Informant 3, who then handed it to USPV Representative One.

Overt Act No. 8:  On January 30, 2020, USPV Representative One delivered nine ounces of gold bullion to Undercover Officer.

Overt Act No. 9:  On November 17, 2020, USPV Manager accepted $25,000 in cash from Confidential Informant 3, who said it was from the sale of "skante" (methamphetamine), and structured the transfer of it to Gold Business in exchange for wire transfers of $10,000 and $12,000, purportedly from the sale of gold, to launder the cash.

EXHIBIT

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982(a)(1)]

1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to defendant U.S. PRIVATE VAULTS, INC. that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 982(a)(1), in the event of defendant USPV's conviction under Count One of this Indictment.

2.   Defendant USPV shall forfeit to the United States the following property:

a.   All right, title, and interest in any and all property, real or personal, involved in or traceable to any transaction set forth in Count One of this Indictment, including, without limitation the property set forth in paragraph 3 below; and

b.   A sum of money equal to the total value of the property described in subparagraph a above.

3.   The Grand Jury finds probable cause to believe that the following property, located at U.S. PRIVATE VAULTS, INC., 9182 WEST OLYMPIC BLVD., BEVERLY HILLS, CA 90212, is subject to forfeiture on the grounds set forth in paragraph 2 above:

a.   The business computers;

b.   The money counters;

c.   The nests of safety deposit boxes and keys;

d.   The digital and video surveillance and security equipment; and

e.   The biometric scanners.

4.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b),

11

EXHIBIT

defendant USPV shall forfeit substitute property, up to the value of the property described in paragraph 2 above if, as the result of any act or omission of defendant USPV, the property described in paragraph 2 above or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

EXHIBIT

                        FORFEITURE ALLEGATION TWO

                [21 U.S.C. § 881(a)(6), 28 U.S.C. § 2461(c)

                        and 21 U.S.C. § 853]

    1.   Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to defendant U.S. PRIVATE VAULTS, INC. that the United States will seek forfeiture as part of any sentence in accordance with Title 21, United States Code, Section 881(a)(6), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853, in the event of defendant USPV's conviction under Count Two of this Indictment.

    2.   Defendant USPV shall forfeit to the United States the following property:

         a.   All right, title, and interest in any and all property, real or personal:

              i.   constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense set forth in Count Two of this Indictment, including, without limitation, the property set forth in paragraph 3 below; or

              ii.  used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the offense set forth in Count Two of this Indictment, including, without limitation, the property set forth in paragraph 3 below; and

         b.   A sum of money equal to the total value of the property described in subparagraph a above.

///

                                13
                             EXHIBIT

3.    The Grand Jury finds probable cause to believe that the following property, located at U.S. PRIVATE VAULTS, INC., 9182 WEST OLYMPIC BLVD., BEVERLY HILLS, CA 90212, is subject to forfeiture on one or more of the grounds set forth in paragraph 2 above:

    a.    The business computers;

    b.    The money counters;

    c.    The nests of safety deposit boxes and keys;

    d.    The digital and video surveillance and security equipment; and

    e.    The biometric scanners.

4.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant USPV shall forfeit substitute property, up to the value of the property described in paragraph 2 above if, as the result of any act or omission of defendant USPV, the property described in paragraph 2 above or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

EXHIBIT

FORFEITURE ALLEGATION THREE

[31 U.S.C. § 5317(c) and 28 U.S.C. § 2461(c)]

1.   Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to defendant U.S. PRIVATE VAULTS, INC. that the United States will seek forfeiture as part of any sentence in accordance with Title 31, United States Code, Section 5317(c), and Title 28, United States Code, Section 2461(c), in the event of defendant USPV's conviction under Count Three of this Indictment.

2.   Defendant USPV shall forfeit to the United States the following property:

     a.   All right, title, and interest in any and all property, real or personal, involved in or traceable to the offense set forth in Count Three of this Indictment, including, without limitation, the property set forth in paragraph 3 below; and

     b.   A sum of money equal to the total value of the property described in subparagraph a above.

3.   The Grand Jury finds probable cause to believe that the following property, located at U.S. PRIVATE VAULTS, INC., 9182 WEST OLYMPIC BLVD., BEVERLY HILLS, CA 90212, is subject to forfeiture on the grounds set forth in paragraph 2 above:

     a.   The business computers;

     b.   The money counters;

     c.   The nests of safety deposit boxes and keys;

     d.   The digital and video surveillance and security equipment; and

     e.   The biometric scanners

4.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 31, United States Code, Section

15

EXHIBIT

5317(c)(1)(B), and Title 28, United States Code, Section 2461(c), defendant USPV shall forfeit substitute property, up to the value of the property described in paragraph 2 above if, as the result of any act or omission of defendant USPV, the property described in paragraph 2 above or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/
_____
Foreperson

TRACY L. WILKISON
Acting United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

ANDREW BROWN
Assistant United States Attorney
Major Frauds Section

16
EXHIBIT