TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ANDREW BROWN (Cal. Bar No. 172009)
VICTOR A. RODGERS (Cal. Bar No. 101281)
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorneys
Major Frauds/Asset Forfeiture/
General Crimes Sections
     1100/1400/1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0102/2569/1785
     Facsimile: (213) 894-6269/0142/0141
     E-mail: Andrew.Brown@usdoj.gov
             Victor.Rodgers@usdoj.gov
             Maxwell.Coll@usdoj.gov

Attorneys for Defendants
UNITED STATES OF AMERICA, et al.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>      Plaintiff,<br><br>          v.<br><br>UNITED STATES OF AMERICA,<br>TRACY L. WILKISON (OFFICIAL<br>CAPACITY), KRISTI KOONS JOHNSON<br>(OFFICIAL CAPACITY),<br><br>      Defendants. | Case No. 2:21-cv-02803-RGK-MAR<br><br>**DEFENDANTS UNITED STATES OF AMERICA, TRACY L. WILKISON (OFFICIAL CAPACITY) AND KRISTI KOONS JOHNSON (OFFICIAL CAPACITY)'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF ANDREW BROWN, JUSTIN PALMERTON AND JESSIE MURRAY; [PROPOSED] ORDER GRANTING MOTION LODGED UNDER SEPARATE COVER**<br><br>Date:       June 28, 2021<br>Time:       9:00 a.m.<br>Courtroom: 850, the Honorable<br>                 R. Gary Klausner |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on June 28, 2021 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable R. Gary Klausner, United States District Court, Courtroom 850, Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, California 90012, defendants United States of America, Tracy L. Wilkison (official capacity) and Kristi Koons Johnson (official capacity) (collectively, "the government") will and hereby do move, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.  This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on May 20 and 21, 2021 (see Brown Decl. ¶ 5), and is made on the grounds that there is no subject matter jurisdiction over this action and plaintiff's complaint fails to state a claim upon which relief can be granted.

This motion is based upon this notice of motion and motion; the attached memorandum of points and authorities and declarations of Andrew Brown, Justin Palmerton and Jessie Murray; the proposed order granting the motion (lodged under separate cover); all pleadings and papers on file in this action; and such other and further matters as

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

1  may be presented at any hearing on this Motion, and matters of which

2  the Court may take notice.

3  Dated: May 28, 2021                Respectfully submitted,

4                                     TRACY L. WILKISON
                                      Acting United States Attorney
5
                                      SCOTT M. GARRINGER
6                                     Assistant United States Attorney
                                      Chief, Criminal Division
7

8                                     _____/s/_____
                                      ANDREW BROWN
9                                     VICTOR A. RODGERS
                                      MAXWELL COLL
10                                    Assistant United States Attorneys

11                                    Attorneys for Defendants
                                      UNITED STATES OF AMERICA, et al.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES...........................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES............................................1

I.    INTRODUCTION.............................................................1

II.   STATEMENT OF FACTS......................................................1

III.  ARGUMENT................................................................5

      A.    The Standards For Motions To Dismiss Under Fed. R. Civ.
            12 For Lack Of Subject Matter Jurisdiction And Failure
            To State A Claim Upon Which Relief Can Be Granted........5

      B.    Plaintiff's Complaint Seeks To Invoke The Equitable
            Jurisdiction Of This Court..............................7

      C.    Plaintiff Cannot Discharge His Burden Of Showing
            Equitable And Therefore Subject Matter) Jurisdiction
            Exists Because The Commencement Of Administrative
            Forfeiture Proceedings Provides Plaintiff With An
            Adequate Remedy At Law And Divests The Court Of
            Jurisdiction To Hear This Case..........................8

      D.    Plaintiff Has Not Discharged His Burden Of Showing
            That He Should Be Allowed To Litigate This Case Using
            A Pseudonym............................................12

            1.    The Prejudice To The Government ..................14

            2.    The Public's Interest ...........................15

            3.    Plaintiff's Need For Anonymity ..................16

                  a.   Severity of The Threatened Injury And
                       Reasonableness Of Plaintiff's Fear .........16

                  b.   Plaintiff's Vulnerability To Retaliation .......19

IV.   CONCLUSION.............................................................20

DECLARATION OF AUSA ANDREW BROWN...............................................21

DECLARATION OF SPECIAL AGENT JUSTIN PALMERTON...................................44

DECLARATION OF SUPERVISORY SPECIAL AGENT JESSIE MURRAY..........................45

i

**TABLE OF AUTHORITIES**

**Federal Cases**

A.G. v. Unum Life Ins. Co. of America,
  2018 WL 903463 (D. Or. Feb. 14, 2018) ......................... 13

Abernathy v. Kral,
  305 F. Supp. 3d 795 (N.D. Ohio 2018) ......................... 10

Baranski v. Fifteen Unknown Agents of ATF,
  195 F. Supp. 2d 862 (W.D. Ky. 2002) .......................... 12

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544 (2007) ........................................... 6

Bender v. Williamsport Area School Dist.,
  475 U.S. 534 (1986) ........................................... 5

Billingsley v. C.I.R.,
  868 F.2d 1081 (9th Cir. 1989) ................................. 5

Caltex Plastics, Inc. v. Lockheed Martin Corp.,
  824 F.3d 1156 (9th Cir. 2016) ................................. 6

CFK, LLC v. United States,
  324 F.R.D. 236 (D. Ut. 2018) ................................. 10

DaimlerChrysler Corp. v. Cuno,
  547 U.S. 332 (2006) ........................................... 5

Doe v. John F. Kennedy Univ.,
  2013 WL 4565061 (N.D. Cal. Aug. 27, 2013) ................ 15, 19

Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate,
  596 F.3d 1036 (9th Cir. 2010) ........................ 13, 16, 18

Does I thru XXIII v. Advanced Textile Corp.,
  214 F.3d 1058 (9th Cir. 2000) ........................... passim

Faith Action For Community Equity v. Hawaii,
  2014 WL 320587 (D. Haw. Jan. 29, 2014) ...................... 18

Haltiwanger v. United States,
  494 F. Supp. 2d 927 (N.D. Ill. 2007) ........................ 10

Ibarra v. United States,
  120 F.3d 472 (4th Cir. 1997) ................................. 11

ii

**TABLE OF AUTHORITIES CONTINUED**

In Re Return of Seized Prop. (Jordan),
    625 F. Supp. 2d 949 (C.D. Cal. 2009) ............................... 9

In Re The Return of Seized Property, Specifically All Funds Seized
    from BoundlessRise, LLC,
    2017 WL 4180149 (C.D. Cal. Aug. 30, 2017) ......................... 9

Jessica K. v. Eureka City Schools Dist.,
    2014 WL 689029 (N.D. Cal. Feb. 21, 2014) ......................... 15

Massey v. Ojaniit,
    759 F.3d 343 (4th Cir. 2014) ...................................... 6

Ramsden v. United States,
    2 F.3d 322 (9th Cir. 1993) ........................................ 7

Roberts v. Corrothers,
    812 F.2d 1173 (9th Cir. 1987) ..................................... 6

Safe Air for Everyone v. Meyer,
    373 F.3d 1035 (9th Cir. 2004) .................................. 5, 6

Seismic Reservoir 2020, Inc. v. Paulsson,
    785 F.3d 330 (9th Cir. 2015) ...................................... 6

Thornhill Pub. v. General Tel. and Electronics Corp.,
    594 F.2d 730 (9th Cir. 1979) ...................................... 5

$8,050.00 in U.S. Currency v. United States,
    307 F. Supp. 2d 922 (N.D. Ohio 2004) ............................ 10

United States v. 2nd Amendment Guns, LLC,
    917 F. Supp. 2d 1120 (D. Or. 2012) .............................. 12

United States v. $8,850,
    461 U.S. 555 (1983) ............................................... 7

United States v. Elias,
    921 F.2d 870 (9th Cir. 1990) ................................ passim

United States v. Ibrahim,
    522 F.3d 1003 (9th Cir. 2008) ..................................... 7

United States v. Martinson,
    809 F.2d 1364 (9th Cir. 1987) ..................................... 7

1

**TABLE OF AUTHORITIES CONTINUED**

2

United States v. Naovalath,
   2008 WL 2885965 (D. Minn. Jul. 22, 2008) ........................ 10

3

4

United States v. One 1974 Learjet,
   191 F.3d 668 (6th Cir. 1999) .................................... 11

5

6

United States v. One 1987 Jeep Wrangler,
   972 F.2d 472 (2d Cir. 1992) ..................................... 11

7

United States v. Ritchie,
   342 F.3d 903 (9th Cir. 2003) ..................................... 7

8

9

United States v. Stoterau,
   524 F.3d 988 (9th Cir. 2008) ............................... passim

10

11

United States v. U.S. Currency in the Amount of $146,800,
   1997 WL 269583 (E.D.N.Y. Apr. 28, 1997) ........................ 12

12

United States v. U.S. Currency, $83,170.78,
   851 F.2d 1231 (9th Cir. 1988) ............................ 8, 9, 11

13

14

United States v. Voraveth,
   2008 WL 4287293 (D. Minn. Jul. 1, 2008) ........................ 10

15

16

Von Saher v. Norton Simon Museum of Art at Pasadena,
   592 F.3d 954 (9th Cir. 2010) ..................................... 6

17

Warren v. Fox Family Worldwide, Inc.,
   328 F.3d 1136 (9th Cir. 2003) .................................... 6

18

19

White v. Lee,
   227 F.3d 1214 (9th Cir. 2000) .................................... 5

20

21

**Federal Statutes**

22

18 U.S.C. § 983.................................................... 10

23

19 U.S.C. § 1608.................................................... 9

24

25

**Federal Rules**

26

Fed. R. Civ. P. 10(a)............................................. 13

27

Fed. R. Civ. P. 12............................................. 3, 5

28

**TABLE OF AUTHORITIES CONTINUED**

Fed. R. Civ. P. 12(b)(1)......................................passim

Fed. R. Civ. P. 12(b)(6)......................................1, 6

Fed. R. Civ. P. 12(h)(3).........................................5

Fed. R. Crim. P. 41.............................................12

Fed. R. Crim. P. 41(g)......................................passim

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

Defendants United States of America, Tracy L. Wilkison and Kristi Koons Johnson (collectively, "the government") respectfully submit this memorandum of points and authorities in support of their motion pursuant to Fed. R. Civ. P. 12(b)(1) and (6) to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.[1]  Because the government has commenced forfeiture proceedings against the assets plaintiff seeks to have returned, plaintiff cannot show that subject matter jurisdiction lies, plaintiff has an adequate remedy at law and the Court is divested of jurisdiction to hear plaintiff's case.  Even if plaintiff could show that subject matter jurisdiction exists, this case should still be dismissed because plaintiff has not established that plaintiff's need for anonymity in prosecuting this case using a pseudonym outweighs the prejudice to the government and the public's interest in knowing the identity of all parties in this lawsuit.

**II.**

**STATEMENT OF FACTS**

Plaintiffs John Doe, Richard Roe, Michael Moe and Charles Coe have filed virtually identical unverified complaints against the government asserting claims for return of property pursuant to Fed.

---

[1] Because the complaints were filed by the same law firm and are virtually identical, the government has filed identical motions to dismiss in John Doe v. United States of America, et al., Case No. 2:21-cv-02803, Richard Roe v. United States of America, et al., Case No. 2:21-cv-02919, Michael Moe v. United States of America, et al., Case No. 2:21-cv-02990 and Charles Coe v. United States of America, et al., Case No. 2:21-cv-03019.

1

R. Crim. P. 41(g) and violation of the Fourth and Fifth Amendments arising from the government's allegedly unlawful search and seizure of plaintiff's personal property which was located in safe deposit boxes at US Private Vaults ("USPV").  Docket No. 1.  The complaints further allege, while making no representation regarding plaintiff's gender (and the government in this brief uses masculine pronouns to refer to plaintiff), that plaintiff sues using a pseudonym to protect himself from the risk of criminal prosecution, and from injury, harassment, retaliation and embarrassment.  Complaint ¶ 5.

Doe alleges he had property in safe deposit "boxes" at USPV where there are between 600 and 1,000 safe deposit boxes while the remaining plaintiffs allege they had property in only one box. Complaint ¶¶ 5 and 10.  Except for Coe who identifies safe deposit box number 904 as his and "currency" as the property housed within that box (Coe complaint ¶ 9), none of the other plaintiffs identify either their box number or the property situated therein and instead generally aver that there was "non-contraband valuable property" in their safe deposit box or boxes (Doe, Moe and Roe complaint ¶ 5).

Plaintiff alleges that USPV's offerings are designed to provide customers with increased privacy and security and differ from those available at a typical bank in the following ways.  Complaint ¶ 11. USPV identifies its customers through encrypted biometric information – an iris scan – and does not use other personal identifying information related to its customers; USPV does not maintain keys to its customers boxes, customers maintain all keys to their boxes, and customers can access the vault containing their boxes only through an iris or biometric hand geometry scan; USPV offers 24/7 monitoring by the ADT security company and outside motion detectors, heat sensors,

1  and other sophisticated security measures to detect the presence of

2  intruders after regular business hours; and USPV offers insurance for

3  each safe deposit box up to $500,000 per box.  Id.

4       A grand jury indicted USPV for conspiring with its customers to

5  launder money, distribute drugs, and structure financial transactions

6  to avoid currency reporting requirements.  Brown Decl. ¶ 2 and Ex. A.

7  The government obtained a sealed criminal seizure warrant for, among

8  other things "[t]he nests of safety deposit boxes and keys" located

9  at USPV, and the warrant provides that it "does not authorize a

10 criminal search or seizure of the contents of the safety boxes[,]"

11 that "agents shall follow their written inventory policies to protect

12 their agencies and the contents of the boxes" and that "agents shall

13 inspect the contents of the boxes in an effort to identify their

14 owners in order to notify them so that they can claim their

15 property[.]"  Brown Decl. ¶¶ 3 and 4 and Ex. B.

16      Between March 22 and 26, 2021, federal agents executed the

17 seizure warrant and removed the nests of safe deposit boxes,

18 inventorying their contents in the process, as authorized in the

19 seizure warrant and discussed in the affidavit supporting it.  Id.;

20 Palmerton Decl. ¶ 2; Complaint ¶ 12.  The inventory of the boxes'

21 contents revealed, among other items, firearms, illegal drugs, and

22 anonymous stores of wealth, mostly cash.  Palmerton Decl. ¶ 2.  Drug

23 detecting dogs alerted to most, but not all of the cash stashes.  Id.

24      Plaintiff's complaint challenges the constitutionality of the

25 procedure whereby the government provided box holders the opportunity

26 to request the return of seized property (which procedure does not

27 involve the asset forfeiture proceedings discussed below) and

28 provided plaintiff with a voluntary additional remedy that the

1   government is not required to provide when executing a warrant.

2   Specifically, plaintiff alleges that USPV has been closed since March

3   26, 2021, and has a sign affixed to the door that instructs box

4   holders to go to a FBI website that provides that, to make a claim

5   for property stored at USPV, a box holder (such as plaintiff) should

6   provide his first, middle and last names and best contact number so

7   that a FBI agent can contact the box holder for additional details.

8   Doe complaint ¶¶ 15 and 16; Roe, Moe and Coe complaint ¶¶ 17 and 18.

9        Plaintiff alleges, not based on personal knowledge but instead

10  on information and belief in his unverified complaint that the

11  government intends to "refuse the return of property to any box

12  holder who adheres to his or her constitutional rights and refuses to

13  waive his or her Fifth Amendment rights[;]" "subject every box holder

14  to criminal investigation[;]" and "refuse to return the property in

15  the safe deposit box to the owner unless the owner explains to the

16  USAO how they obtained the property in their safe deposit box and

17  convinces the USAO that it was not related to the commission of a

18  'crime'."   Doe complaint ¶ 14 and Roe, Moe and Coe complaint ¶ 16.

19       On May 20, 2021, the FBI initiated administrative forfeiture

20  proceedings as to particular identified boxes' contents, including

21  about 350 boxes containing currency like Coe's box number 904 plus

22  boxes housing other assets, by sending a written notice to USPV and

23  other persons the FBI could identify as having a potential interest

24  in particular boxes.   Murray Decl. ¶ 2 and Ex. A.   The notice advised

25  of the FBI's commencement of the proceedings for specific boxes'

26  contents and sets forth how interested persons can submit a petition

27  for remission or claim thereto.   Id.   The government will also be

28  posting similar notices on the internet at www.forfeiture.gov.   Id.

## III.

### ARGUMENT

**A.    The Standards For Motions To Dismiss Under Fed. R. Civ. P. 12 For Lack of Subject Matter Jurisdiction And Failure To State A Claim Upon Which Relief Can Be Granted.**

Federal courts should not adjudicate controversies where subject matter jurisdiction is lacking because they "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986)(citation omitted).  As courts of limited jurisdiction, the presumption is that a court is "without jurisdiction unless the contrary appears affirmatively from the record." Id. at 546 (internal quotes and citations omitted).  The burden of establishing subject matter jurisdiction rests upon the party invoking it [DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 n.3 (2006)] and "the court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction." Billingsley v. C.I.R., 868 F.2d 1081, 1085 (9th Cir. 1989) (internal quotes and citation omitted); see also Fed. R. Civ. P. 12(h)(3).

Fed. R. Civ. P. 12(b)(1) subject matter jurisdiction attacks can be either facial or factual. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  In "a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  Conversely, in a factual attack "[n]o presumptive truthfulness attaches to plaintiff's [complaint's] allegations" [Thornhill Pub. v. General Tel. and Electronics Corp., 594 F.2d 730, 733 (9th Cir. 1979) (internal quotes and citation

omitted)], "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" [Safe Air for Everyone, 373 F.3d at 1039 (citation omitted)], and courts may weigh the extrinsic evidence in determining whether the facts show that a plaintiff has discharged plaintiff's burden of demonstrating that subject matter jurisdiction exists [Roberts v. Corrothers, 812 F.2d 1173, 1177-78 (9th Cir. 1987)].

Courts should grant a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted when a complaint fails to allege a cognizable legal theory or sufficient factual support for a legal theory. Caltex Plastics, Inc. v. Lockheed Martin Corp., 824 F.3d 1156, 1159 (9th Cir. 2016). Fed. R. Civ. P. 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Seismic Reservoir 2020, Inc. v. Paulsson, 785 F.3d 330, 335 (9th Cir. 2015) (internal quotes and citation omitted). Also, a complaint must set forth "enough facts to state a claim for relief that is plausible on its face" to defeat the motion. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). On the motion, courts accept as true the well-pleaded material factual allegations of a complaint but need not accept as true conclusory allegations, unwarranted factual deductions, unreasonable inferences or legal characterizations. Bell Atlantic Corp., 550 U.S. at 555; Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). Moreover, courts may consider documents attached to or mentioned in a complaint and matters subject to judicial notice without converting the motion into a summary judgment motion. Massey v. Ojaniit, 759 F.3d 343, 347-48 (4th Cir. 2014); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010).

**B.    Plaintiff's Complaint Seeks To Invoke The Equitable Jurisdiction Of This Court.**

Because plaintiff seeks the return of property pursuant to Fed. R. Crim. P. 41(g), plaintiff's complaint (or for that matter a motion, which is treated as a complaint)[2] seeks to invoke the Court's equitable jurisdiction.  Fed. R. Crim. P. 41(g) motions/complaints are only appropriate where the return of property is sought and no criminal action seeking forfeiture of the property is pending nor have civil forfeiture proceedings been instituted.  See United States v. $8,850, 461 U.S. 555, 569-70 (1983) (recognizing such motions under former Fed. R. Crim. P. 41(e)).  Because such a movant has no other available forum to address the grievance, Fed. R. Crim. P. 41(g) motions are treated as equitable civil actions.  United States v. Martinson, 809 F.2d 1364, 1367 (9th Cir. 1987).

The Ninth Circuit has recognized that a district court's invocation of equitable jurisdiction to hear a Fed. R. Crim. P. 41(g) request for return of property should be exercised with caution and restraint.  Ramsden v. United States, 2 F.3d 322, 324 (9th Cir. 1993).  It is a fundamental principle of equitable jurisdiction that if an adequate remedy at law exists, equitable relief is unavailable. United States v. Elias, 921 F.2d 870, 875 (9th Cir. 1990) (affirming

---

[2] Ninth Circuit cases instruct district courts to treat Rule 41(g) motions as civil complaints governed by the Federal Rules of Civil Procedure.  United States v. Ibrahim, 522 F.3d 1003, 1007 (9th Cir. 2008) ("[b]ecause there were no criminal proceedings pending at the time of filing, the District Court properly treated the motion as a civil complaint governed by the Federal Rules of Civil Procedure") (citation omitted); United States v. Ritchie, 342 F.3d 903, 906-07 (9th Cir. 2003).  Once district courts treat the motion "as a civil complaint, . . . it [is] required to apply the Federal Rules of Civil Procedure.  These rules apply to each stage of the proceedings, the same way they would in the civil context."  Ibrahim, 522 F.3d at 1008 (citation omitted and emphasis in original).

7

district court's refusal to exercise equitable jurisdiction "because
Elias had an adequate remedy at law"); United States v. U.S.
Currency, $83,170.78, 851 F.2d 1231, 1235 (9th Cir. 1988) (affirming
denial of motion for return of property where adequate remedies at
law existed; there was "no need to fashion an equitable remedy").

**C.   Plaintiff Cannot Discharge His Burden Of Showing Equitable
       (And Therefore Subject Matter) Jurisdiction Exists Because
       The Commencement Of Administrative Forfeiture Proceedings
       Provides Plaintiff With An Adequate Remedy At Law And
       Divests The Court Of Jurisdiction To Hear This Case.**

The government has commenced administrative forfeiture
proceedings as to Coe's property and likely as to Doe, Moe and Roe's
property, but they have refused to identify the boxes in which their
property was stored and their refusal to identify themselves or their
boxes illustrates (as discussed in Section D below) that they should
not be permitted to sue using pseudonyms.  Therefore, neither Coe nor
the remaining plaintiffs (who cannot establish that the government
has not commenced forfeiture proceedings as to their property) can
discharge his burden of showing that equitable (i.e., subject matter)
jurisdiction lies here.  That is because plaintiff has an adequate
remedy at law - - namely to pursue their claims in the administrative
forfeiture proceedings, and the court is therefore divested of
jurisdiction to hear plaintiff's Fed. R. Crim. P. 41(g) complaint.

In Elias, the Ninth Circuit held that administrative forfeiture
proceedings provide an adequate remedy at law and therefore preclude
a district court from exercising equitable jurisdiction to hear a
Fed. R. Crim. P. 41(g) motion for return for property.  There, the
government had seized assets and initiated administrative forfeiture

proceedings by providing notice thereof.  In affirming the district court's dismissal of Elias' motion, the court concluded that "Elias had a remedy at law pursuant to the administrative forfeiture scheme set forth in 19 U.S.C. § 1608."  921 F.2d at 872.  The court rejected the argument that only pending judicial forfeiture proceedings precluded Fed. R. Crim. P. 41(g) relief, and held that administrative forfeiture proceedings "provided Elias with the procedural tools to seek judicial review of the lawfulness of the seizure of his property" and that "both [the administrative and judicial forfeiture] procedures give the claimant an adequate remedy at law."  Id. at 873.

Following this rule, numerous Ninth Circuit and district court cases within the Ninth Circuit have dismissed Fed. R. Crim. P. 41(g) motions and complaints where forfeiture proceedings are pending, reasoning that the initiation of forfeiture proceedings provides an adequate remedy at law and divests courts from hearing Fed. R. Crim. P. 41(g) motions or complaints for the return of property.  See, e.g., U.S. Currency, $83,310.78, 851 F.2d at 1235 ("when a civil forfeiture proceeding is pending, there is no need to fashion an equitable remedy to secure justice for the claimant"); In Re Return of Seized Prop. (Jordan), 625 F. Supp. 2d 949, 955 (C.D. Cal. 2009) (in granting the government's motion to dismiss a Fed. R. Crim. P. 41(g) motion for return with prejudice, the court noted "the Ninth Circuit has held that a Rule 41(g) motion is properly denied once a civil forfeiture action has been filed") (citation omitted); In Re The Return of Seized Property, Specifically All Funds Seized from BoundlessRise, LLC, 2017 WL 4180149 (C.D. Cal. Aug. 30, 2017) (in granting government's motion to dismiss for lack of subject matter jurisdiction, the district court noted "if a related civil forfeiture

proceeding is filed - - either before or after the Rule 41(g) motion was brought - - the court no longer has jurisdiction to entertain the Rule 41(g) motion.  A civil forfeiture proceeding gives the claimant an adequate remedy at law, precluding exercise of the district court's equitable powers") (internal quotes and citations omitted).

Cases outside the Ninth Circuit are in accord.  Abernathy v. Kral, 305 F. Supp. 3d 795 (N.D. Ohio 2018) (where the government has begun civil forfeiture proceedings, a motion for return should be denied because plaintiff has an adequate remedy at law in the civil forfeiture case to challenge forfeiture and seek return of seized property); CFK, LLC v. United States, 324 F.R.D. 236 (D. Ut. 2018) (where government has begun civil forfeiture proceedings, Fed. R. Crim. P. 41(g) motion should be dismissed because claimant can no longer show that claimant lacked a legal remedy as required to obtain equitable relief under Fed. R. Crim. P. 41(g)); Haltiwanger v. United States, 494 F. Supp. 2d 927 (N.D. Ill. 2007) (granting government's motion to dismiss for lack of jurisdiction because the district court lacked equitable jurisdiction to hear Fed. R. Crim. P. 41(g) motion once administrative forfeiture proceedings were commenced).

Numerous other cases also reach the same result.  United States v. Voraveth, 2008 WL 4287293, *13 (D. Minn. Jul. 1, 2008), r.& r adopted, United States v. Naovalath, 2008 WL 2885965 (D. Minn. Jul. 22, 2008) (equitable relief under Fed. R. Crim. P. 41(g) is not available once administrative forfeiture proceedings commenced because those proceedings provide an adequate remedy at law); $8,050.00 in U.S. Currency v. United States, 307 F. Supp. 2d 922, 926-27 (N.D. Ohio 2004) (comprehensive provisions in 18 U.S.C. § 983, governing the procedural aspects of civil forfeiture proceedings,

give claimant an adequate remedy at law for contesting a civil forfeiture; thus, once the Government commences administrative forfeiture proceedings, a Rule 41(g) motion must be dismissed).[3]

Indeed, in dismissing Fed. R. Crim. P. 41(g) actions, courts specifically hold that forfeiture proceedings provide an adequate remedy at law to raise any claim, like plaintiff's claim here, that the seizure violated the Fourth and Fifth Amendments. Elias, 921 F.2d at 873 (administrative forfeiture proceedings "provided Elias with the procedural tools to seek judicial review of the lawfulness of the seizure of his property" and "an adequate remedy at law"); U.S. Currency, $83,310.78, 851 F.2d at 1235 ("when a civil forfeiture proceeding has been filed, the claimant has adequate remedies to challenge any fourth amendment violation. Accordingly, when a civil forfeiture proceeding is pending, there is no need to fashion an equitable remedy to secure justice for the claimant. The district court did not err in denying the Rule 41(e) motion"); United States v. One 1987 Jeep Wrangler, 972 F.2d 472, 479 (2d Cir. 1992) ("the claimant is afforded the opportunity to test the legality of the seizure in the forfeiture proceeding. Consequently, once the administrative process has begun, the district court loses subject matter jurisdiction to adjudicate the matter in a peripheral setting such as a Rule 41(e) motion") (citations omitted).

---

[3] See also United States v. One 1974 Learjet, 191 F.3d 668, 673 (6th Cir. 1999) ("After the government initiates forfeiture proceedings and notifies a claimant of the proceedings, a claimant may no longer use Rule 41(e), but instead must submit to the statutory procedures governing civil forfeiture proceedings") (citation omitted); Ibarra v. United States, 120 F.3d 472, 475-76 (4th Cir. 1997) ("once the Government initiates forfeiture proceedings, the district court is divested of jurisdiction" to hear Fed. R. Crim. P. 41(g) motion).

Multiple other cases reach the same result.  See, e.g., United States v. 2nd Amendment Guns, LLC, 917 F. Supp. 2d 1120 (D. Or. 2012) (once government commences administrative forfeiture proceeding, claimant has an adequate remedy at law to raise claimant's Fourth Amendment unlawful search arguments); Baranski v. Fifteen Unknown Agents of ATF, 195 F. Supp. 2d 862, 868 (W.D. Ky. 2002) (district court has no jurisdiction to consider Fed. R. Crim. P. 41 motion raising Fourth and Fifth Amendment issues because the commencement of forfeiture proceedings provides an adequate remedy at law and therefore shows that the movant cannot establish equitable jurisdiction); United States v. U.S. Currency in the Amount of $146,800, 1997 WL 269583, *5 (E.D.N.Y. Apr. 28, 1997) (Fed. R. Crim. P. 41 motion is not an appropriate vehicle for challenging the legality of a seizure because the claimant has adequate remedy at law – i.e., contesting the forfeiture in the civil forfeiture case).

Therefore, plaintiff's complaint should be dismissed for lack of subject matter jurisdiction.  The commencement of administrative forfeiture proceedings provides an adequate remedy at law and divests the Court of jurisdiction to hear plaintiff's claims.

**D.   Plaintiff Has Not Discharged His Burden Of Showing That He Should Be Allowed To Litigate This Case Using A Pseudonym.**

As set forth above, dismissal is warranted because plaintiff has not shown that subject matter jurisdiction exists.  However, should the Court conclude that the evidence is insufficient as to any particular plaintiff at this time to decide whether subject matter jurisdiction lies, the government respectfully submits that dismissal is still appropriate because plaintiff has not shown that he is entitled to proceed with a fictitious name.  Moreover, in this case

plaintiff is requesting to proceed in an extraordinary and
unprecedented manner - - not as in the usual case where anonymity is
sought and a litigant's identity is shielded from the public, but
instead with total and complete anonymity so that not even the
defendant government or the Court knows who he is.

A plaintiff's "use of fictitious names runs afoul of the
public's common law right of access to judicial proceedings . . . and
[Fed. R. Civ. P.] 10(a)'s command that the title of every complaint
include the names of all the parties."  Does I thru XXIII v. Advanced
Textile Corp., 214 F.3d 1058, 1067 (9th Cir. 2000) (internal quotes
and citation omitted).  The presumption is that parties "must use
their real names," which "is loosely related to the public's right to
open courts, and the right of private individuals to confront their
accusers."  Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate,
596 F.3d 1036, 1042 (9th Cir. 2010) (citations omitted).

The Ninth Circuit has carved out an exception in the "unusual
case" and in "special circumstances" when non-disclosure of the
plaintiff's actual name "is necessary . . . to protect a person from
harassment, injury, ridicule or personal embarrassment."  Advanced
Textile Corp., 214 F.3d at 1067-68 (internal quotes and citations
omitted).  To invoke the exception, the "party seeking anonymity has
the burden of proving it should be allowed to proceed anonymously."
A.G. v. Unum Life Ins. Co. of America, 2018 WL 903463, *1 (D. Or.
Feb. 14, 2018) (citing United States v. Stoterau, 524 F.3d 988, 1013
(9th Cir. 2008)); cf. Advanced Textile Corp., 214 F.3d at 1071
("plaintiffs satisfied this burden").

In order to discharge the burden, a plaintiff must show that the
"need for anonymity outweighs prejudice to the opposing party and the

13

public's interest in knowing the party's identity." Id. at 1068.  As to a plaintiff's need for anonymity where, as here, a plaintiff alleges he needs to shield himself from retaliation, courts consider "(1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's fears; and (3) the anonymous party's vulnerability to such retaliation." Id. (citations omitted).

### 1.    The Prejudice To The Government.

The prejudice to the government in allowing plaintiff to proceed anonymously is manifest.  As argued above, none of the plaintiffs, including Coe who identified his box number and the other plaintiffs who have not, have shown that subject matter jurisdiction lies.  The government offered irrefutable proof that it has commenced forfeiture proceedings against Coe's property and jurisdiction thus does not exist.  However, the government is prejudiced because it cannot offer the same proof for the other plaintiffs without knowing their box numbers and identity (to verify they actually own the box contents).

Also, the particular facts as to each plaintiff are critical. The government needs to verify that any plaintiff who identifies his box number is the box holder he claims to be, which is especially troublesome given USPV's anonymous business model.  There is no way the government can determine that an anonymous plaintiff is the true box holder, let alone the owner of the box's contents, without knowing plaintiff's identify.  It would be reckless for the government to resolve a case by agreeing to return property to an anonymous plaintiff because the government has no way of knowing whether he actually has a property interest in anything; the true owner could show up later.  Plaintiff's identity is central and material to his claims that he is entitled to the return of property.

In addition, there is the need to determine whether plaintiff lawfully possessed the items he claims; the public interest is not served by returning criminal proceeds to criminals.  If items within a box were legitimately derived and belong to a plaintiff, then the government sincerely wishes to return them.  However, that factual question cannot be answered without knowing the plaintiff's identity.

Courts have found prejudice if plaintiff's anonymity interferes with the defendant's ability to address specific allegations against the defendant or is logically impracticable.  Advanced Textile Corp., 214 F.3d at 1072 ("[w]e recognize that at some later point in the proceedings it may be necessary to reveal plaintiffs' identities to defendants so that defendants may refute individualized accusations of FLSA violations"); Jessica K. v. Eureka City Schools Dist., 2014 WL 689029, *5 (N.D. Cal. Feb. 21, 2014) (defendants prejudiced because "the matter likely involves extensive discovery directed at third parties, such as school children," and "[i]t would be most impracticable to expect deponents or interviewees-such as classmates who alleged harassed plaintiffs or witnessed such claimed events-to attend depositions and then keep the contents of such depositions secret . . . or to keep mum about who they think is accusing them"); Doe v. John F. Kennedy Univ., 2013 WL 4565061, *4 (N.D. Cal. Aug. 27, 2013) (granting motion to dismiss Doe complaint: "it is unclear how Defendants would interview potential witnesses to gather facts or to assess Plaintiff's credibility if they could not disclose her name. Third party discovery would be similarly awkward and difficult").

## 2. The Public's Interest.

It is well-settled that the public interest is served by open and public court proceedings in which the litigants' identities and

15

1    claims are known to all.  Allowing a party to sue under a fictitious

2    name obstructs "the common law rights of access to the courts and

3    judicial records." Kamehameha Schools, 596 F.3d at 1042; see also

4    Advanced Textile Corp., 214 F.3d at 1067 ("[p]laintiffs' use of

5    fictitious names runs afoul of the public's common law right of

6    access to judicial proceedings") (citations omitted); Stoterau, 524

7    F.3d at 1018 ("[i]dentifying the parties to a proceeding is an

8    important dimension of publicness.  The people have a right to know

9    who is using their courts") (internal quotes and citation omitted).

10        This case is a matter of public interest.  Articles have

11   appeared in newspapers regarding this case, and permission to

12   intervene in Coe's case for the purpose of filing an amicus curiae

13   brief because of the purported importance of this case has been

14   filed.  Docket No. 29 in Coe case (2:21-cv-03019).

15        **3.   Plaintiff's Need For Anonymity.**

16            **a.   Severity Of The Threatened Injury And**

17                **Reasonableness Of Plaintiff's Fear.**

18        The severity of the threatened harm and the reasonableness of

19   the plaintiff's fears "are intricately related and should be

20   addressed together.  In order to proceed anonymously, a plaintiff

21   must show both (1) fear of severe harm and (2) that the fear of sever

22   harm is reasonable." Kamehameha Schools, 596 F.3d at 1043 (emphasis

23   in original).  Plaintiff has shown neither.

24        Despite bearing the burden of showing these elements in his

25   fear-of-retaliation case, plaintiff has offered no facts.  Instead,

26   plaintiff alleges in conclusory fashion that he brings his claims

27   pseudonymously "to protect himself from the risk of criminal

28   prosecution, and from injury, harassment, retaliation, and

embarrassment" [complaint ¶ 5] and alleges "on information and belief" that the government intends to criminally investigate every box holder and will refuse to return the contents of safe deposit boxes unless the box holder persuades the government that the property is unrelated to a crime [Doe complaint ¶ 14 and Roe, Moe and Coe complaint ¶ 16]. Plaintiff has failed to discharge his burden.

Plaintiff avers on information and belief in his unverified complaint that he fears a "criminal investigation" if he identifies himself. The government's investigation is merely an attempt to learn the facts. Of course the government intends to vet every assertion of ownership to anonymously stored valuables. The FBI has already received bogus ownership assertions to boxes, and knows of instances in which stolen valuables were stored there. Palmerton Decl. ¶ 4. But it is nonsensical to label such investigations as "criminal" at the outset. Doubtless many law-abiding citizens stored items at USPV not because USPV promised anonymity or they stored criminal proceeds there, but because USPV was near their homes. The government will return that property without a criminal inquiry. Id. at ¶¶ 3 and 5. By contrast, if the facts of the investigation indicate criminality, then naturally the government would investigate whatever offense was indicated. Plaintiff suggests that such an investigation would be an injury. But an investigation is merely an attempt to learn the truth, and attempting to do so is not an "injury" at all, let alone a severe one.

In fact, the Ninth Circuit has held that even the risk of physical violence may be insufficient to justify proceeding under a pseudonym. In Stoterau, the Ninth Circuit denied a convicted child sex offender's request to use a pseudonym in its published opinion

even though he argued that his was an unusual case in which there was a need for anonymity because sex offenders such as Stoterau faced an elevated risk of violent abuse in prison.  The court rejected his argument, noting that it would apply equally to other sex offenders, so his case was not "unusual."  524 F.3d at 1012-13.  By the same token, plaintiff's request for anonymity would apply equally to the other hundreds of USPV boxholders or, indeed, any person who sought the return of property but worried that the government would as a result investigate their assertion that they owned the property.

Plaintiff's complaint is also fatally flawed because he offers nothing, conclusions or otherwise, to show that his alleged fear of harm is reasonable (i.e., that revealing his identity will cause the government to retaliate against him).  Kamehameha Schools, 596 F.3d at 1044 ("fear of severe harm is irrelevant if the plaintiffs do not reasonably fear severe harm") (emphasis in original).  Plaintiff's complaint does not show that he is at risk of any sort of retaliatory harm as a result of filing this lawsuit.  Additionally, plaintiff has offered no evidence that he (or anyone who sued in his real name) has been subject to any actual threats as a result of their lawsuit.

In Faith Action For Community Equity v. Hawaii, 2014 WL 320587 (D. Haw. Jan. 29, 2014), the court denied non-English speaking plaintiffs, who failed driver license tests, permission to sue using fictitious names to challenge Hawaii's policy of offering driver license examinations only in English.  In so ruling, the court noted that plaintiffs' allegations that they had been stopped by the police for driving without a license "provide no support for the proposition that the Does risk criminal prosecution by participating in this litigation" and the prior stops could be for "a traffic inspection,

1  random alcohol check, or other matters, and that, by driving without

2  a license, the Does risk prosecution for reasons wholly independent

3  of whether they are litigants." Id. at *4 (emphasis in original).

4       The same reasoning applies here.  There is no evidence that the

5  government is conducting criminal investigations because a plaintiff

6  has sued the government.  Instead, what is critical to the

7  government's decision to conduct a criminal investigation is what is

8  in a specific box, not whether the box's owner has sued the

9  government for the return of the items within the box.

10      Plaintiff relies upon Advanced Textile Corp., but the risk of

11 unfair retaliation was clear in that case because plaintiffs had

12 shown that laborers who complained of unfair working conditions were

13 fired, blackballed by employers, and deported to China where they

14 faced imprisonment for failing to make good on debts they incurred to

15 labor recruiters.  No comparable evidence exists here.

16              **b.   Plaintiff's vulnerability to retaliation.**

17      Plaintiff is not unusually or uniquely vulnerable to

18 retaliation.  In Advanced Textile Corp., non-resident garment workers

19 living and working in the U.S. Commonwealth of the Northern Marina

20 Islands sued under the Fair Labor Standards Act, and alleged in their

21 complaint that they "fear that if their true identity is revealed,

22 they will face actual physical violence, the threat of physical

23 violence, immediate deportation to China or their country of origin,

24 likely arrest upon arrival in China or their country of origin . . .

25 and economic retaliation." Id. at 1063.  The economic retaliation

26 included factory managers' actual threats of "termination,

27 blacklisting, deportation, and closing the factory." Id. at 1065.

28 Also, plaintiffs resided in company housing, and "at least some

1   employers attempt to prevent their employees from leaving the

2   'barracks' without permission." Id. at 1072.  Plaintiffs in Advanced

3   Textile Corp. were among the most powerless: indebted factory workers

4   dependent on their employers for wages and housing, and who could be

5   deported if their defendant employer chose to retaliate against them,

6   and the court permitted them to begin their litigation anonymously in

7   part because of "their highly vulnerable status."  Id. at 1069.

8        Plaintiff here, by contrast, is the opposite: a wealthy person

9   living in the United States who has the means to hire a large law

10  firm to do his bidding and spend well over a thousand dollars a year

11  to store items anonymously at USPV.  Far from a downtrodden factory

12  worker who must toil thousands of miles from his home in substandard

13  conditions, plaintiff is a member of the economically elite.  As a

14  result, his personal circumstances bear little resemblance to those

15  of Advanced Textile Corp.'s vulnerable plaintiffs.

16                                **IV.**

17                            **CONCLUSION**

18       For the foregoing reasons, the government respectfully requests

19  that its motion be granted.

20  Dated: May 28, 2021           Respectfully submitted,

21                                TRACY L. WILKISON
                                  Acting United States Attorney
22                                SCOTT M. GARRINGER
                                  Assistant United States Attorney
23                                Chief, Criminal Division

24                                _____/s/_____
                                  ANDREW BROWN
25                                VICTOR A. RODGERS
                                  MAXWELL COLL
26                                Assistant United States Attorneys

27                                Attorneys for Defendants
                                  UNITED STATES OF AMERICA, et al.
28